BENJAMIN STEVENS, JR. AND JACOB CORLIES, appellees,
*v.* ZEBULON TOWNSEND, appellant.

This Court will not dismiss an appeal from a decree of the Court of Chancery, on
motion of the appellees, on the ground that the appellant, having made default
in the Court below, had no right of appeal, unless the decree recite all those facts,
which, by the rules and practice of the Court of Chancery, entitle a party to de-
fault his adversary.

The decree of the Court of Chancery appealed from in this cause, recited, that the
"cause having been heretofore brought on to be heard and decided, upon the agree-
ment and stipulation of the said Townsend, and the complainants, and the answer
of the said Townsend, and upon exhibits read by stipulation and consent, and the
said bill having been taken as confessed against the said Colby and the said Bum-
pus," (co-defendants with Townsend,) "and upon hearing Mr. Lane and Mr.
Buckbee, of counsel for the complainants, and no person appearing to argue the
said cause on the part of the defendants, and due deliberation being thereupon had,"
&c. *Held*, that it did not show such a default of the defendant, the appellant, and
abandonment of his cause in the Court below, as would deprive him of the right
of appeal to this Court.

The Court decline expressing any opinion, in this case, as to whether there are any,
and if any, what restrictions upon the right of appeal to this Court, from the Court
of Chancery, conferred by the statute, (R. S. 397, § 121,) but infer from a review
of cases decided by the Court of Errors in New York, touching the right of appeal
to that Court, where the appellant has made default in the Court below, 1. That
the restrictions upon the general right of appeal to that Court, result *principally*
from that provision of the constitution of New York, which makes it imperative
upon the Chancellor, and upon the Judges of the Supreme Court, to inform the
Court of Errors, of the reasons of their judgments; and 2. That if the error alleged,
in the appellate Court, could not have been obviated in the Court below, by proof
or amendment, had objection been there made, the appeal will be sustained.

The statute, (R. S. 380, § 127,) is not *mandatory*, but merely *authorizes* the Chan-
cellor to sit with the Justices of the Supreme Court, and inform them of the rea-
sons of his decree or order, on the hearing of an appeal therefrom to the Supreme
Court.

APPEAL from the Court of Chancery. A motion was
made by the appellees, to dismiss the appeal on the
ground that the appellant had made default in the Court

below, by failing to appear and argue the cause at the hearing whereupon the decree had been entered, and that, therefore, no appeal would lie from such decree to this Court. The facts fully appear in the opinion of the Court.

*C. W. Lane*, in support of the motion, contended that the equity jurisdiction of this Court was appellate only, R. S. 362, § 3 ; Id. 379, § 120, 121 ; Id. 359, § 7 ; Id. 358, § 3 ; Id. 379, § 125 ; and, that the decree in this case, having been entered by default, under rules prescribed by the Chancellor, Rule 69 ; 1 Hoff. Ch. Pr. 557 ; and expressly authorized by statute, cannot be appealed from. 2 R. S. N. Y. 167, § 27, compared with R. S. 379, § 125. *Kane* v. *Whittick*, 8 Wend. R. 219, opinions of *Sutherland*, J. and of *Beardsley* and *Maynard*, Senators. *Hildreth* v. *Sands*, 12 John. R. 494 ; *Travis* v. *Waters*, 12 John. R. 511 ; *Gelston* v. *Hoyt*, 13 John. R. 575 ; *Henry* v. *Cuyler*, 17 John. R. 471 ; *Colden* v. *Knickerbacker*, 2 Cow. R. 49 ; *Campbell* v. *Stokes*, 2 Wend. R. 137 ; *Houghton* v. *Starr*, 4 Wend. R. 179, showing the rule adopted by the Court of Errors in New York ; and also, *Dean* v. *Abel*, 1 Dick. R. 282 ; 2 Sch. & Lef. 689, 712 ; 2 Dowl. R. 72 ; 4 Bridg. Eq. Dig. 51, § 55, § 57 ; Id. 52, § 69 ; Seat. F. Ch. 386, showing the rule adopted in the English House of Lords. So entirely do courts of appellate jurisdiction carry out the principle, that their authority is only to review and correct the deliberate decisions of the inferior courts, that they will not permit a point to be made which was not made in the court below. *Frankland* v. *McGarty*, 1 Knapp's R. 274 ; 2 Sch. & Lef. 712 ; *Beekman* v. *Frost*, 18 John. R. 558 ; 13 John. R. 562 ; *Barnes* v. *Lee*, 1 Bibb R. 526 ; 3 Am. Eq. Dig. 179, § 8.

*Wm. A. Fletcher*, contra, insisted, *First*, That there was no default of the appellant on the hearing in the Court below. 1. There was no proper proof of the fact. This

should have been shown by the decree, which should have recited every fact going to constitute the default. *Sands* v. *Hildreth*, 12 John. R. 493, '4. Nothing can be presumed. 2. The default insisted upon, is no default by the rules and practice of the Court below. Rules 67 & 69, of the Court of Ch. There is no rule requiring the party to argue the cause. He may submit it upon the papers. 3. The cause was argued on the part of the appellant at the term preceding that in which the default is alleged to have been made. The hearing in July was a continuation of the former hearing, and, therefore, there could have been no default at the second hearing. Bea. Ord. in Ch. 198 ; 4 Bridg. Dig. 282 ; *Halsey* v. *Smith*, 1 Mos. R. 186 ; *Veneman* v. *Veneman*, 1 Dick. R. 93. 4. If the second hearing had no such connexion with the first, then the cause was not regularly brought on for a hearing at the July term, and, therefore, the appellant could not be in default. The notices required by Rules 65 & 62, were not given. That the notice required by Rule 65, was given, should appear by the decree. 12 John. R. 494.

*Secondly.* The cause was presented to and decided by the Court upon the merits, and the decree was thereupon made, and not of course. This appears by the decree itself and by other circumstances.

*Thirdly.* If the merits of the case had not been presented to, and passed upon by the Court below, yet the appellant is entitled to his appeal, because the objection now made to the decree as a ground of error, could not have been obviated in the Court below, by proof or amendment, had it been made in that Court. This proposition is fully sustained by the cases cited by the counsel for the appellees, from the Court of Errors in New York, in support of this motion, and by *Palmer* v. *Lorillard*, 16 John. R. 348, and by *Beckman* v. *Frost*, 18 John. R. 544, 558.

*Fourthly.* The appellate jurisdiction of the Court of Errors in New York, and the House of Lords in England, are peculiar, and the rules and practice which have been adopted in those Courts in respect to the right of appeal, are not applicable here. The appellate jurisdiction of the House of Lords was not created, defined, or regulated by any written law. 3 Bl. Com. 39, 40, 57. Its practice upon appeals has been adopted from considerations of expediency, or from accident, or ancient usage. It differs from that of courts proceeding according to the course of the civil law, from which appeals are derived, and by which, an appeal stands in the appellate court for a retrial upon the whole merits of the cause, as well as to matters of fact, as of law, and the whole cause is tried without any reference to the evidence given below, or the law which was there applied to the case. 3 Dall. R. 327 ; 14 Mass. R. 420 ; 7 Pick. 303. The restrictions upon the right of appeal to the House of Lords, are unknown in courts of appellate jurisdiction proceeding according to the course of the civil law. As to the Court of Errors, its jurisdiction was modeled after that of the House of Lords, 2 Hoff. Ch. Pr. 14; and the principal reason which it has assigned, for the restrictions it has imposed upon the right of appeal, is derived from that provision of the constitution of New York, which makes it *imperative* upon the Chancellor and Judges of the Supreme Court, to assign their reasons, before the Court of Errors, for their respective decisions, and the statute making it the *imperative duty* of that Court to require those reasons. 12 John. R. 493; 13 Id. 561; 17 Id. 469 ; 2 Cow. R. 31 ; 4 Wend. R. 138. The origin and design of the appellate jurisdiction of this Court, is entirely different from that of either the House of Lords or Court of Errors. There is nothing peculiar in the general character and powers of this Court as the Supreme Court of Law, nor in the object of giving an ap-

peal which requires or authorizes a departure in its proceedings, on appeals from Chancery, from the proceedings in Courts of general appellate jurisdiction according to the civil law.

When an appeal is given · by our statute, it is intended and understood to be governed by the rules of the civil law, unless modified by the statute.   7 Pick. 303.   The several appeals given by our statutes have in practice been so regarded, as appeals from the County Courts to the Supreme Court of the late Territory, appeals from Justices' Courts to the Circuit Courts, and from the Probate Courts to this Court.   The right of appeal given by our statute from the Court of Chancery, and the powers and duties of this Court upon such appeal, are full and explicit, and leave no room for such a construction as is contended for by the appellees.

WHIPPLE, J. delivered the opinion of the Court.

Upon the entry of the appeal in this cause, by the appellant, a motion was made by the appellees to dismiss the same for the want of jurisdiction.   The principal ground urged by the counsel in support of the motion, is, that the decree having been entered by default, under rules prescribed by the Chancellor, and expressly authorized by the statute, cannot be the subject of an appeal to this Court.

It appears from the record, that the bill was filed against William L. Colby, Samuel B. Bumpus and the appellant, and was what is generally termed, a creditor's bill, and also, a bill to set aside conveyances of certain lands made by Colby to Bumpus, and by Bumpus to Townsend, in fraud of the rights of the creditors of Colby.   Bumpus and Colby failed to appear and defend, and as to them the bill was taken *pro confesso*.   Townsend, however, did appear and put in an answer.   In December, 1841, the

complainants and Townsend, by their respective solicitors, entered into a stipulation, by which they agreed that the cause should be heard at the January term, 1842, of the Court of Chancery, upon the bill, the answer of Townsend, and certain exhibits specified in the stipulation. At the February term, 1842, of the Court of Chancery, the Chancellor made a decree by which the said conveyances were declared to be fraudulent and void, and directed a conveyance of the premises in question, by Colby to the receiver who had been appointed in the cause. The decree is, in part, as follows: " This cause having been heretofore brought on to be heard and decided upon the agreement and stipulation of the said Townsend and the complainants, and the answer of said Townsend, and upon exhibits read by stipulation and consent; and the said bill having been taken as confessed against said William L. Colby and Samuel B. Bumpus, and upon hearing Mr. Lane and Mr. Buckbee, of counsel for the complainants, and no person appearing to argue said cause on the part of said defendants, and due deliberation being had thereupon," &c.

The right of appeal from the Court of Chancery to this Court, is given in these words : "Any person, complainant or defendant, who may think himself aggrieved by the decree or final order of the Court of Chancery, *in any case*, may appeal therefrom to the Supreme Court." R. S. 379, § 121. Upon the entry of the appeal, the duties and powers of this Court are declared, as follows: "Upon any order or decree of the Court of Chancery being brought by appeal to the Supreme Court, that Court shall examine all errors that shall be assigned, or *found* in such order or decree, and shall hear and determine such appeal, and all matters concerning the same, and shall have power to reverse, affirm, or alter such order or decree, and to make

such other order or decree therein, as justice or equity shall require." R. S. 379, § 125.

It is further provided, that when an appeal is heard, the Chancellor shall be *authorized* to sit with the Judges of the Supreme Court, and inform them of the reasons of his decree or order, but shall have no voice in the final sentence. R. S. 380, § 127.

It is proper here to state, that, upon the argument of this motion, certain affidavits were read to show that the case was argued upon the merits at the January term, 1842, of the Court of Chancery, and submitted for decision, agreeably to the terms of the stipulation; and that the Chancellor before whom the argument was had, resigned his office in the month of April following, without pronouncing an opinion; that, at the July term following, the present Chancellor, upon the suggestion of the complainants' solicitor, ordered the cause to be docketed and set down for argument, although this course was resisted by the solicitor for the defendants, on the ground that the cause was not regularly set down for a hearing by the complainant, and four days' notice of that fact given to the opposite solicitor, pursuant to the rules and practice of the Court. It further appears that, at the hearing, the bill, answer and exhibits were read, and that the Chancellor, in expressing his opinion, stated, that it was founded chiefly upon the views of the late Chancellor, which had been communicated to him. The register of the Court has also certified that the cause was not docketed at the July term for a hearing, until after its session commenced, no notice having been given, or request made, for that purpose, and that he neglected to make an entry in the journal, of the hearing of the cause at the preceding January term, pursuant to the stipulation.

With this statement of the facts upon which the motion is based, and the provisions of the statute applicable

thereto, I shall now proceed to its consideration.   In support of the motion numerous authorities have been cited, both from England and New York, showing the rule which prevails in the House of Lords, and in the Court of Errors upon the subject of appeals from chancery, and it is not a little remarkable that the counsel for the respective parties have each referred to many of the same authorities to support directly opposite principles.   A critical review of these cases will not fail to show that they might, with great propriety, be cited by counsel on both sides, exhibiting, as they do, a remarkable instance of the facility with which the decisions of that anomalous tribunal—the Court of Errors—may be accommodated to particular cases as they arise, and how easily the principles established by that high Court, at one period, may be overthrown, by the same Court, at another: and especially, how readily the reasoning in support of a principle by one judge, may be disposed of by his successors.

The first case in New York in which the question of the jurisdiction of the Court of Errors in appeals from Chancery, arose, was that of *Robert Sands* v. *Hildreth*, 12 John. R. 493.   Hildreth filed his bill against Robert Sands, Comfort Sands and Amie J. Barbarine.   The bill was taken as confessed against Comfort Sands, for want of answer, and as to Barbarine, the cause stood on the bill and answer.   An answer of Robert Sands was also filed and a replication thereto; and witnesses were examined on the part of Hildreth; but none on the part of the appellants.   The cause was regularly set down for a hearing, when the defendants all made default, no person appearing on behalf of either of them; upon which a decree was pronounced by the Chancellor.   The decree recited particularly the fact that the cause was regularly set down for a hearing, and that no person appeared for the appellants.

Stevens *v.* Townsend.

The cause having been appealed, a motion was made by the appellee to dismiss, 1. On the ground that the defendants did not appear in the Court below to defend the suit; 2. Because the Court of Errors would be obliged to decide without having the reasons of the Chancellor; 3. Because it would be making the Court of Errors a Court of original jurisdiction; and 4. Because no matter not insisted upon in the Court below, can be made the ground of appeal. The case of *Dean* v. *Abel,* 1 Dick. 282, was referred to as a decision by the House of Lords sustaining the proposition that where default was made at the hearing, the Court would not go into the merits, but dismiss the appeal. The motion to dismiss was resisted by the counsel of the appellant, upon the ground that an appeal was clearly and explicitly given by the statute, and that, therefore, the English authorities were inapplicable; and further, that the Chancellor was bound to examine every case that might come before him, before pronouncing a decree. The motion to dismiss prevailed, and as this appears to have been the first case that arose, involving the right of a party to appeal where a default was made below, it is to be regretted that no reasons were given for granting the motion.

The next case which brought this question before the Court of Errors, is that of *Gelston* v. *Hoyt,* 13 John. R. 561. The case was brought before the Court of Errors by writ of error to the Supreme Court. The plaintiff below demurred to special pleas filed by the defendant, and the defendant's counsel declined arguing the demurrer when it was called up for argument; whereupon, judgment on the demurrer was rendered in favor of the plaintiff as of course. One of the errors assigned was, that the matters contained in the special pleas, amounted in law to a justification, and that the judgment on the demurrer ought to have been in favor of those pleas. It was in-

sisted by the counsel for the defendant in error, that, inasmuch as the plaintiffs in error did not choose to argue the demurrer in the Supreme Court, they ought to be precluded from raising any question upon it in the Court of Errors; for, if such a course was sanctioned, it would have the effect of depriving the plaintiff below of the benefit of the permission which the Supreme Court would have granted him, of withdrawing his demurrer and replying to the pleas. The Chancellor, in delivering his opinion upon this point, remarks—" That the Judges of the Supreme Court have not assigned reasons for the judgment which they pronounced on the demurrer, because, as was stated by Mr. Justice *Spencer*, in behalf of the Court, when the cause was called," (meaning the issue joined on the demurrer,) " the defendant's counsel appeared and declined to argue." The Chancellor then proceeds to discuss the question raised, and sustained the objection made by the defendants in error, upon the following grounds: 1. Because, such a course of proceeding would be unfair, inasmuch as " it takes from the party demurring an advantage which he would have been entitled to in the Supreme Court, if the inclination of that Court had been against him, of withdrawing his demurrer, and replying to the pleas;" and that " a party acts against good conscience, if he will not come forward and disclose his reasons, when called upon by the proper tribunal, but reserves himself for another Court, and for the cold, hard purpose of accumulating costs, or of depriving his adversary of the opportunity of correcting his error." 2. Because the point was within the reason of the decision of the Court in the case of *Sands* v. *Hildreth;* and he suggests that the appeal, in that case, was dismissed because the appellant failed to appear after the cause had been regularly set down for a hearing, on due notice. 3. Because " the theory and constitution of a Court of appel-

late jurisdiction only, is the correction of errors which a Court below may have committed, and a Court below cannot be said to have committed an error when their judgment was never called into exercise, and the point of law was never taken into consideration, but was abandoned by the acquiescence or default of the party who raised it ;" and that, to consider " questions of law which the party would not discuss in the Supreme Court, and which that Court, therefore, did not consider, would be in effect, to assume original jurisdiction." 4. " Because," said the Chancellor, " a still more decisive objection to our taking into consideration a question on demurrer in the Court below, and there refused to be argued, is to be drawn from the constitution which provides for the institution of this Court. It declares that, " if a cause shall be brought up by writ of error in a question of law on a judgment in the Supreme Court, the Judges of the Court shall assign the reasons of such their judgment." The inference which the Chancellor deduces from this provision of the constitution of New York, is, that "in a case in which the opinion of the Supreme Court was never required, or taken, no reasons can be assigned, and it is not a case for a writ of error within the perview of the constitution." And then adds, that the Court of Errors "are entitled, *as of right*, to the aid of those reasons."

The next case referred to in argument is *Palmer* v. *Lorillard*, 16 John. R. 348, decided also by the Court of Errors. It would seem that the action below was in *assumpsit*, and that the facts found by a special verdict, entitled the plaintiff to a judgment in *trover;* the Court, without adverting to the form of the action, gave judgment for the plaintiff. In the discussion of this point, the Chancellor remarked "that the attention of the Supreme Court was never called to the application of the finding of the jury to the charge; and probably the declaration

was never presented to them; if it had been, it would have been impossible for them to have rendered a judgment for the plaintiffs, because the verdict destroyed the cause of action." He then proceeds to say that the case did not come within the rule that an objection not taken in the Court below, could not be taken in the Court of Errors; "that the rule was only intended to be applied to objections that the party may be deemed, by his silence, to have waived, and which, when waived, still leave the merits of the case to rest with the judgment." "But," continues the Chancellor, "if the foundation of the action has manifestly failed, we cannot, without shocking the common sense of justice, allow a recovery to stand." Such, then, was the opinion, in this case, of the Chancellor and of the Court of Errors upon this vexed question, and after giving to it the most deliberate and careful consideration, I am unable to reconcile it with the views expressed by that learned Judge in the case of *Gelston* v. *Hoyt*. Does not the reasoning he adopted in that case, apply with equal force to that of *Palmer* v. *Lorillard?* Was it not competent for the plaintiff in error to have brought the question raised in the Court of Errors, to the attention of the Supreme Court? The error complained of was too palpable to have escaped the notice of counsel, and the inference cannot be resisted, that the failure to direct the attention of the Supreme Court to the discrepancy between the declaration and the verdict, was intentional; and the attempt on the part of the plaintiff in error to avail himself of an objection of that nature in the Court above, subjects him to the imputation cast upon such a course of procedure, in the first objection stated by the Chancellor in the case of *Gelston* v. *Hoyt*. But it is still more difficult to reconcile the decisions in these cases, if the learned Chancellor meant what his language obviously imports he did mean, in the fourth objection which has

already been quoted. It is there stated as decisive of the question, "that in a case in which the opinion of the Supreme Court was never required, or taken, no reasons can be assigned, and it is not a case for a writ of error within the perview of the constitution." Can language be more plain? And was not the principal reason, for refusing to entertain jurisdiction of the question raised by counsel in the case of *Gelston* v. *Hoyt*, founded upon the fact that the constitution prohibited the Court of Errors from considering any question which was not presented for the decision of the Supreme Court? If, in that case, it was unconstitutional, it was equally so in the case of *Palmer* v. *Lorillard*, and there is a conflict of decision.

The principle, then, to be gathered from this decision is, that if, in any case which may come before the Court of Errors, either upon writ of error or appeal, it appear "that the foundation of the action below manifestly failed, the Court of Errors could not, without shocking the common sense of justice, permit the recovery to stand."

Next in order of time is the case of *Henry* v. *Cuyler et ux.* 17 John. R. 469. Cuyler and his wife filed a declaration in covenant against Henry, who demurred; there was a judgment by default for Cuyler and his wife; damages were afterwards assessed, and a final judgment rendered in favor of the plaintiffs below. It further appears that the case took this course by consent of counsel, and for the purpose of obtaining a decision of the Court of Errors upon the construction of the instrument, upon which the action was founded. The counsel for the plaintiff in error, having moved to bring on the cause for argument, Mr. Justice *Van Ness* said, that the question raised in the cause had never been brought before the Supreme Court for its consideration, although it was true that a similar question was decided by that Court in the case of *The Corporation of New York* v. *Cashman*, 10 John. R. 96.

He further remarked that no reasons for the judgment could be assigned, judgment below having been entered on a default. The Chancellor observed, that the Court of Errors could not take notice of a cause which had never been brought before the Court below for its consideration and judgment, although they may have solemnly decided a similar question in some other cause. He then referred to the decision of the Court in the case of *Sands* v. *Hildreth,* and of *Gelston* v. *Hoyt,* in support of the opiniòn he gave for dismissing the writ of error; and to the views he expressed in the case of *Gelston* v. *Hoyt,* as containing a full exposition of the reasons for his opinion upon the question under consideration. It will be perceived, that the Chancellor does not even advert to his opinion in the case of *Palmer* v. *Lorillard,* decided three years after the case of *Gelston* v. *Hoyt,* which I have endeavored to show overthrew the whole foundation upon which his reasoning in the latter case rested. It appears somewhat remarkable, that the Chancellor should have passed by the case of *Palmer* v. *Lorillard,* without even the cold respect of a passing notice; more especially, as it was the last case which brought the question he was then considering, to the attention of the Court of Errors, and in which it was asserted in strong language, that the strict rule laid down in the case of *Gelston* v. *Hoyt,* was not to be so construed as to include cases where the foundation of the action in the Court below, failed; for such an application of the rule would be shocking the common sense of justice. The conclusion, then, is irresistible, that the Court of Errors, in the case of *Henry* v. *Cuyler,* abandoned the principles established in the case of *Palmer* v. *Lorillard,* and fell back once more on the old ground maintained in the case of *Gelston* v. *Hoyt.*

This perplexing question slumbered until 1820, when it was once more revived, in the case of *Beekman* v. *Frost,*

18 John. R. 544.   The error assigned in the Court above was, that the facts stated in the bill gave the respondents no rights as plaintiffs in a Court of Equity.   It was objected that this ground was not taken below, nor decided by the Chancellor.   Chief Justice *Spencer*, in delivering the opinion of the Court, says : " This question has frequently arisen, and it is necessary that it should be now settled in such a manner, that no further embarrassment may be experienced."   This language certainly contains an admission that the question was *unsettled*, although the Chief Justice intimates that, properly understood, the cases which I have attempted to review are reconcileable. After referring to these cases, he says that, " the principle to be extracted from them, I believe to be this : That no party shall be allowed to surprise or mislead his adversary : thus, if a party in the Court below, shall purposely suffer a decree or judgment to pass by default against him, without contesting them, he shall not be heard here ; or, if counsel shall, for the first time, raise a point here, which might have been obviated, had it been made in the Court below, he ought not to be permitted to do so."   " But," he continues, " when a cause has been defended in a Court below, and comes here for review, and a point is made here, which could not be obviated in the Court below, by proof or amendment, I am clearly of opinion, that this Court ought not to refuse cognizance of such point.   We may not, it is true, upon such point, have the reasons of the judgment in the Court below ; but this consideration cannot, and ought not, to preclude this Court from entertaining such point."   This decision of the Court of Errors is important, because the case is more analogous to the one before this Court, than any other to be met with in New York, in which the present question is involved ; and also, because the Court repudiate some of the reasoning upon which the opinion in the case of *Gelston* v. *Hoyt* was

based, and reaffirm the views expressed in the case of *Palmer* v. *Lorillard,* and which it will be recollected, were not noticed by the Court in the case of *Henry* v. *Cuyler.* But the Court go further, and lay down the broad proposition, that if a point is made in the Court of Errors, which could not be obviated in the Court below, by proof or amendment, they will take cognizance of it, although it was not made below, and notwithstanding the constitutional requirement, that that Court should assign the reasons for its judgment. In the case of *Knickerbacker* v. *Colden,* 2 Cow. R. 31, the Court dismissed the writ of error, for the reason that the defendant below never appeared or made any defence, and that the Supreme Court might have afforded him all the relief sought for, if an application for that purpose had been made. The points assigned for error were that there existed irregularities in the proceedings below.

The opinion of the Court of Errors upon this question, in the case of *Campbell* v. *Stokes,* 2 Wend. R. 137, deserves a more extended examination. There were two issues in fact joinèd in the Supreme Court, and only one of them was passed upon by the jury; and this was assigned for error. It was admitted that no application was made to the Supreme Court, by motion in arrest of judgment or otherwise, to bring the question to the notice of that Court. The Chancellor, in giving his opinion, says: "There is a manifest distinction to be observed between the proceedings on writs of error in this Court, and the proceedings of the Supreme Court on writs of error to inferior tribunals. The Supreme Court are bound to correct errors in the proceedings of inferior tribunals which are brought before them, whether they relate to decisions either actually or nominally made by the Court below, or to matters out of the record, usually denominated errors in fact. But in the organization of this Court, it was evi-

dently the intention of the framers of the constitution, that it should be strictly an appellate Court, for the re-examination and correction of decisions actually made by other tribunals, upon questions actually presented to them for their determination." The Chancellor then refers to that provision of the constitution requiring the Judges of the Supreme Court, on writs of error, to assign the reasons for their judgment, in support of the position thus laid down. Notwithstanding the comprehensive language thus adopted by the Chancellor, he admits that the rule has been, and may be departed from, in certain cases, and cites that of *Palmer* v. *Lorillard*, as belonging to that class. But it is important to notice that the prominent reason, given by the Chancellor, in favor of restricting the jurisdiction of the Court of Errors to the examination of questions which were raised and decided in the inferior tribunals, is to be found in the true construction of the constitution of the state. He admits that the Supreme Court, which is not thus trammeled by constitutional restrictions, may consider all questions properly arising upon the record, whether they were considered in the inferior Court or not. In the case of *Houghton* v. *Starr*, 4 Wend. R. 175, the rule laid down in the preceding case was adopted.

The last case from New York upon this question, is *Kane* v. *Whittick*, 8 Wend. R. 219. After reviewing several of the cases in which the question arose, Mr. Justice *Sutherland* considers the following points to have been settled: "1. That the Court of Errors have uniformly refused to entertain a writ of error or appeal from a judgment or decree, entered by *default* in the Court below, and cites, as an only exception, the case of *Cheatham* v. *Tillotson*, 5 John. R. 430, in which the objection was not raised in the Court of Errors. 2. That the Court of Errors will not permit a point to be made and discussed here, which was

not raised in the Court below.   3.  That in these decisions the Court has proceeded on the ground of a want of juris-diction, as resulting, *first*, from the nature and constitution of a court of appellate jurisdiction merely; and, *secondly*, from that provision of the constitution which declares, "that when an appeal from the decree of a court of equity shall be heard, the Chancellor shall inform the Court of the reason of his decree," &c.   It is worthy of notice that the learned Judge, in delivering the opinion of the Court in this case, seems entirely to have overlooked the opinion of the Chancellor in the case of *Palmer* v. *Lorillard*, and the opinion of Chief Justice *Spencer* in the case of *Beek-man* v. *Frost*, which do, not support the second point sup-posed to have been settled; nor is it supported by the Chancellor in the case of *Knickerbacker* v. *Colden*.

Having now completed the examination of the several cases decided by the Court of Errors in New York, in which the question involved in this case was considered, I think it must be admitted, that it is quite impossible to reconcile those decisions, or the reasoning by which they are supported; and it is equally clear that this want of uniformity arose from the views taken by the Court of Errors in the early decisions; and the correctness of which, to some extent at least, is certainly shaken by the strong reasoning of that Court in subsequent decisions. It only remains for this Court, upon a careful considera-tion of the numerous authorities which have been cited, to endeavor to deduce from the whole, such principles as are warranted by good sense and sound reason.   And we think it very clearly established, 1.  That the restrictions upon the general right of appeal to the Court of Errors, result *principally* from that provision of the constitution of the state which makes it imperative upon the Chancellor and upon the Judges of the Supreme Court, to inform the Court of Errors of the reasons of their judgments.   2.  If

Stevens *v.* Townsend.

the error alleged in the appellate Court, could not have been obviated in the Court below, by proof or amendment, had objection been there made, the appeal will be sustained.

It only remains now to apply these principles to the case before the Court, and see how far they are applicable.

The provision in the constitution of New York renders it *imperative* upon the Chancellor in case of appeal, to inform the appellate court of the reasons of his decree. The statute of this state is not *mandatory* in this respect, but simply *authorizes* the Chancellor to sit with the Judges of this Court in cases of appeal and inform them of the reasons of his decree; and such has been the practical construction which this provision has received, both from the Chancellor and from this Court: neither has ever regarded the provision as *mandatory* in its nature. If this construction of the statute be correct, the principal reason for restricting the right of appeal to the Court of Errors in New York, cannot apply to appeals to the Supreme Court of this state. With regard to the second rule which we have thought sustained by the Court of Errors of New York, but little need be said. The appellant does not complain of any irregularities in the proceedings below; he does not ask this Court to review the case for the purpose of correcting errors of this nature, if any exist; but he simply asks this Court, to review the merits of the case, as presented in the bill, answer and proofs: his complaint is, that the Chancellor erred, in declaring that the conveyances specified in the decree, were fraudulent and void. Irregularities have been suggested, it is true, but for the purpose of showing, (what may or may not be material,) that the defendants below did not intend to waive their defence, or abandon their case. The objection then alledged, by way of error, could not have been obviated in the Court below by proof or amendment.

But, on the part of the appellees, it was strenuously urged that the defendants below having made default, this Court will not entertain the appeal; and in support of this ground, the same course of reasoning was adopted by counsel, in argument, which is to be found in the cases from New York which had been cited in this opinion. We know of no restrictions upon the right of appeal, but such as are prescribed by the law which confers that right : These restrictions are, 1. That the decree or order appealed from, should be final, and not merely interlocutory: 2. That the appellant file an approved bond within ninety days after the order or decree appealed from shall have been made. Admitting, however, for the sake of argument, that an appeal is not allowed to a party who has made default below, that default appearing upon the proceedings to have been regularly taken, it is questionable whether the proceedings in this present case, will justify the application of the principle. It will be perceived that the language employed by the legislature, conferring the right of appeal, is very comprehensive; and to deprive a party of a right thus secured, the evidence that there has been such a default as indicated an abandonment of the case by the party appealing, must be of such a character as to leave no reasonable doubt of the existence of such intention. In other words, rights deemed by the legislature, and by this Court, as eminently important in their nature, cannot be regarded as having been waived by a forced inference, drawn from the conduct of a party during the course of proceedings in the Court below, but the facts which justify such a conclusion, must be so clear and so decisive as to amount to positive evidence of a waiver.

This leads me to a consideration of the nature of the evidence by which this Court is to be governed in establishing the fact whether a party prosecuting an appeal from Chancery, abandoned his defence below. It cer-

Stevens v. Townsend.

tainly is in the power of the party in whose favor a decree is made, upon the default of the opposite party, so to frame that decree, as to show clearly that the default actually occurred. He is supposed to be familiar with the rules and practice by which the Court is governed, and the facts necessary to be stated in the decree, to show that the party was regularly defaulted. If, therefore, the decree fails to recite such facts, it may be fairly inferred, that there was not, in point of fact, a *regular* default; and if not *regular*, then, in point of law, no such default exists, as will authorize this Court to infer that there was an abandonment of the cause in the Court below, by the party appealing, nor any such waiver as will deprive him of the right of appeal. It need not be stated that when a final judgment is rendered in a court of law, or decree made in a court of equity, in consequence of the default of a party, the facts necessary to constitute that default should affirmatively appear in the proceedings, otherwise such judgment or decree will be set aside, on motion, for irregularity. In establishing, for the first time, a rule on this subject, we think it most proper to adopt one warranted by the practice which prevails in courts of equity, safe and certain in its character, and convenient in its application : and that rule is, that *where the appellee asks for the dismissal of an appeal to this Court, from a decree of the Court of Chancery, on the ground of the default of the appellant in the Court below, the decree must recite all those facts, which, by the rules and practice of the Court of Chancery, entitle a party to default his adversary.* The determination, by this Court, of the question whether a default has been regularly entered in the Court below, will, by the adoption of this rule, be made to depend upon an inspection of the decree or order from which an appeal is taken, and the published rules of the Court of Chancery. They will furnish such evidence of the fact, as will preclude all that

doubt and embarrassment which would necessarily result from permitting evidence *dehors* the record, to be adduced; and, what is highly important, this rule will conduce to that certainty in the administration of justice, to attain which, it is the bounden duty of this Court to exert all the powers with which it is invested.

Let us, then, apply the rules thus laid down, to the decree in this case, and see if the default there specified, is such an one as is recognized by the Rules of the Court of Chancery, or known to its practice. The recital in the decree is as follows : " This cause having been heretofore brought on to be heard and decided upon the agreement and stipulation of the said Townsend and the complainants, and the answer of said Townsend, and upon exhibits read by stipulation and consent; and the said bill having been taken as confessed against the said William L. Colby and Samuel R. Bumpus, and upon hearing Mr. Lane and Mr. Buckbee, of counsel for the complainants, and *no person appearing to argue said cause* on the part of said defendants, and due deliberation being had thereupon," &c. Does this recital contain such facts as will warrant the Court in presuming, 1. That there was a default made by the defendants, and if so, 2. That it was such a default as deprives the party against whom it was entered, from appealing to this Court? If there was a default, such default must be shown to have been warranted by the rules or practice of the Court of Chancery. Now, the only default disclosed in the decree, is, that no person appeared to *argue* the cause on the part of the defendants. Is there, then, any rule, which attaches so high a penalty to the failure of a party to *argue* his cause before the Chancellor, as to deprive him of the right of appeal to this Court? None has been shown, and none is presumed to exist. Does not the decree itself show, that the cause was heard upon the bill, the answer of Townsend, and

the exhibits which, by the stipulation of parties, were to be read at the hearing? Cannot a party submit his cause to the Chancellor without argument, or upon briefs? We think he may, and, for aught that appears, he did. May not a party, when a cause is ripe for a hearing, confide in the learning, ability and integrity of the Chancellor, before whom that cause may be pending, trusting, it may be vainly, in the strength of his cause, without endangering his right to have that cause reviewed by the appellate tribunal? To deny a party this right, under such a state of facts, would be to nullify the statute which confers it. But it is further recited in the decree, that "the cause having been heretofore brought on to be heard and decided upon the agreement and stipulation of the complainants and Townsend," &c. By the terms of that stipulation, the cause was to have been heard at the January term, 1842, of the Court of Chancery. Now, if we exclude from our view the evidence furnished by the affidavits and certificates which were read upon the argument, and confine ourselves to the matters contained in the decree and stipulation, would not the natural and necessary inference be that the cause was heard at the time stated in the stipulation, and that the subsequent hearing, at the July term, was a mere continuation of the argument had at the previous term? And thus the inference that the appellant abandoned his cause below is rebutted. If, however, the cause was not heard at the January term, pursuant to the stipulation, but at the July term following, then the evidence of a default contained in the decree is insufficient, because it does not state that "due notice of a hearing was given to the solicitor for the defendants, pursuant to the rules of the Court." 12 John. R. 494. And this Court will presume nothing in favor of a party who seeks to deprive another of the benefit of a valuable right.

I have thus far considered the question under conside-

ration, solely with reference to the facts disclosed in the transcript, for the reason that I do not regard it as necessary to enter into the consideration of the matters disclosed by the papers, filed in support of and against the motion. The ground, I assume, is, that the decree itself contains no sufficient evidence of such default, as will authorize this Court in assuming that the defendants below abandoned their defence.

I have, thus far, avoided the examination of the practice which seems to prevail in the House of Lords, in England, in cases analogous to that under consideration. It is admitted to be as was stated by the counsel for the appellees ; but a careful consideration of the origin of the appellate jurisdiction of that Court, has satisfied my mind that the rules of decision in that tribunal can have but little force or application to the appellate jurisdiction of this Court. Considerations of expediency, accident, and ancient usage, have had much to do in determining the jurisdiction of that and other tribunals in England; a jurisdiction which is not defined, as here, by positive and written constitutions and laws, and regulated by rules of proceeding known only to the civil law. And by reference to 2 Hoff. Pr. p. 14, it will be found that the Court of Errors has adopted the practice in the House of Lords, in cases of appeal, where no other rule is expressly provided. This circumstance, taken in connection with the constitution of that Court, admonishes us not to rely too much upon its practice and decisions.

We have carefully refrained from the expression of an opinion respecting the appellate jurisdiction of this Court, but have confined ourselves to the facts of the case before us. We do not mean to be understood as affirming that the jurisdiction of this Court, in appeals from Chancery, is to be restricted to the extent contended for by counsel in argument. The determination of this question, when

Stevens *v.* Townsend.

it arises, must be considered with reference to principles not brought to view or necessarily involved in the discussion of this particular case.   We should then have to consider the nature and general jurisdiction and powers of this Court; the organization of our whole judicial establishment; its history from the establishment of a national government to the present day; and the application of the rules which obtain, in cases of appeal, where the proceedings are regulated according to the course of the civil, and not the common law.   When a case is properly presented, bringing such a question directly before this Court for its determination, these various topics will undergo discussion, and the question will be decided with all the care and circumspection which its importance demands.

*Motion denied.*