## NEW-YORK COMMON PLEAS.

WARD, Survivor, &c., Appellant, agt. SYME, WORDSWORTH, ANI MASON, Respondents.

' The Code has not abolished the *attorney's lien upon the judgment for his costs* or his *compensation* rendered in obtaining the judgment. And the lien exists, whether the amount of the attorney's compensation is agreed upon or depends upon a *quantum meruit.* (*The views expressed in 4 How. Pr. R.* 337, *and* 5 *id.* 350, *upon this question, not concurred in.*)

All that the Code has done, has been to abolish the fee bill under the Revised Statutes, and to take away all restraints upon attorneys making agreements with their clients for their services; but this does not touch the attorney's *lien* for such services; that has existed by a long current of authorities, and still exists under the Code.

*General Term, Dec.,* 1852. This action was · commenced prior to the Code of Procedure. ·At the trial the plaintiff was ·non-suited, and judgment entered for costs in favor of the defendant, Wordsworth, who defended·by Alfred E. Coren, Esq., :as .his attorney. Coren served a notice on the plaintiff that he claimed a lien on the judgment to the full amount thereof for costs due him in the suit. After the Code of Procedure ·came into effect, the plaintiff appealed to the Court of Appeals, where the judgment was affirmed with costs, and judgment en-·tered on the remittitur for costs, in the Court of Appeals, in favor of Wordsworth, Coren being his attorney in the Court of Appeals. After the entry of the judgment for costs to Words-worth in this court on the remittitur from the Court of Appeals, E. C. Gray, Esq., the party plaintiff in interest, he not having :any knowledge of the service of the notice of.lien on the plain-tiff, (as he stated in his affidavit,) paid Wordsworth a portion of the original judgment in his favor, and obtained from him a satisfaction piece, and had that judgment cancelled of record. ·Coren then applied to this court to vacate the entry of satis-·faction of the original judgment, and to take the satisfaction ·piece off the files. His Honor, Judge INGRAHAM, made an ·order upon that application granting the motion unless the ·plaintiff's executors, (he having died pending the appeal,) or

said Gray within a certain time paid to Coren the balance of the judgment, with costs of motion. This balance, with costs of motion, was paid by Gray to Coren, and the latter then served on Gray and the executors a notice that he had a lien on the judgment entered on the remittitur in favor of the respondent Wordsworth for costs in the Court of Appeals, to the full amount thereof for costs due him. After the service of this notice, Gray obtained from Wordsworth a satisfaction-piece, and had that judgment also cancelled of record. Coren then applied to have the entry of the satisfaction of that judgment vacated, and the satisfaction-piece taken off the files, which application was denied by his Honor, Judge INGRAHAM, and an order to that effect entered. (See 9 *New-York Legal Observer*, 313.) From that order the said Coren appealed to the general term.

F. H. B. BRYAN, *for Coren.*
E. C. GRAY, *Contra.*

DALY, Judge. This is an appeal from an order made at Chambers. The defendant Wordsworth recovered judgment against the plaintiff for costs. The defendant paid the judgment to Wordsworth, and it was regularly satisfied of record. Wordsworth's attorney moved to vacate the satisfaction, claiming to have a lien upon the judgment for his costs, of which it appears he had given due notice to the plaintiff, before the plaintiff paid the judgment. The application was denied upon the ground that an attorney has no longer any lien for his costs; and the point to be determined upon the present appeal is, whether the Code has abolished the attorney's lien. The point came up in Davenport agt. Ludlow, (4 *How. Pr. R.* 337,) and Benedict agt. Harlow and Wendell, (5 *How. Pr. R.* 350,) and SHANKLAND, J., in the one case, and WILLARD, J., in the other, were of opinion that the lien no longer existed; but both cases were decided upon other grounds. In the latter case Justice WILLARD says, " The reason for upholding a lien in favor of the attorney does not exist under the Code. This compensation is no longer measured by the fee bill, but rests

Ward agt. Syme.

in contract. There is no higher necessity for granting him lien on the judgment for costs than there is that the carpenter or mason should have a lien upon the house he had built, or that an agister of cattle should have a lien upon the animals he depastures, neither of which had a lien at common law. The principles on which a lien is given to inn-keepers and certain mechanics, who have made repairs upon property of their customers, are inapplicable to attorneys." To the reasons here given, Judge INGRAHAM adds in the opinion delivered upon deciding the motion below, that, by the Code, the costs are given to the party, and not to the attorney. "The attorney," he remarks, "is left to make his own agreement with his client. He may agree with his client to charge the costs, or more or less; but without some agreement so made, the costs are solely the property of the party, and not of the attorney." Before proceeding to examine these reasons more at length, it may be remarked, in respect to the observations of Justice WILLARD, that it is no longer an open question whether there is any foundation in principle why the attorney should have a lien upon the judgment for his costs. It has long been settled that he had a lien; but the only inquiry now is, whether the Code has changed the law. But if the question was still open, it would be found that in all the cases put by the learned justice, the right to a lien was placed upon grounds peculiar to each case, without at all impairing the general principles upon which the right of lien is founded. In the case of the mason and carpenter, the element of possession is wanting, the possession of the thing upon which the lien is claimed being in the owner of the land, and not in the builder. Lickham agt. Mason, (6 *East.* 27.) And the agister who depastures cattle, like the keeper of a livery stable, has no lien upon the property, first, because the keeping it has been held, imparts no additional value to it; Jackson agt. Cummins, (5 *Mess. and Welsb.* 342;) and secondly, because he has not the entire possession, it being held subject to the right of the owner to use and control it. Wallace agt. Woodgate, (1 *C. and P.* 575;) Bevans agt. Waters, (3 *C. and P.* 528;) Sear agt. Morgan, (4 *Mess. and*

*Welsb.* 283.) As a general rule a lien does not exist unless the party claiming it is in possession of the thing, and has by expending labor and skill enhanced its value, (*Montague on Lien,* 5; *Cross on Lien,* 31; to which necessarily there are some exceptions, as in the case of a seaman who has a lien upon the vessel for his wages, because he contracts with the master upon the credit of the ship; Wilkins agt. Carmichael, (*Douglas,* 101;) Clay agt. Smyelson, (1 *Lord Raymond,* 577; *Abbott on Shipping,* 414;) and those who repair or furnish supplies to a vessel have a lien upon it; but the principle is derived from the civil law, the equitable spirit of which recognises a proprietory interest in those who bestow labor or furnish materials toward the improvement of the property of another. In the conflict between the English Courts of Admiralty and the Courts of Common Law, the right in these cases was derived by the latter courts; so that where it is not a matter of statute regulation, it rests exclusively upon grounds of maritime policy. (*Abbot,* 148, 149; *Benedict's Admiralty,* § 271.) In the case of the attorney's lien upon the judgment for his costs, there can be no possession in either party. The judgment is a record, and under the control of the court; and the right to the lien, it is to be presumed, was originally recognised upon the ground that the attorney had contributed by his labor and skill to the recovery of the judgment; and the court, having the power to control it, would exercise that power for the protection of its own officers. There exists no reported case showing when, or for what reason, it was originally allowed. "Any attempt," says Mr. Cross, in his work on Lien, "to trace its origin or establish the period of its introduction, is useless." Sir James BARROW, who was present during the argument of Wilkins agt. Carmichael, (1 *Doug.* 100,) mentioned to Lord MANSFIELD that the first instance of an order of that kind in the King's Bench was in the case of one Taylor, of Cresham, about the time of a contested election for that borough; to which Lord MANSFIELD replied, that he had himself argued the question in chancery. In deciding Wilkins agt. Carmichael, he said that the practice was not then very ancient; that it was established

on general principles of justice; and that courts then, both of law and equity, had carried it so far that an attorney or solicitor might obtain an order to stop his client from receiving money recovered in a suit in which he had been employed for him, until his bill was paid. Some years after, the rule was thus laid down by Chief Justice WILMOT, in Schoale agt. Noble, (1 *H. B.* 23.) An attorney has, as between himself and his client, a lien for his fees and disbursements, upon the damages and costs recovered in an action; and the rule was acted upon by Lord HARDWICK, in Freeman agt. Gibson, (3 *Atkins*, 720,) who said, " I am of opinion that a solicitor, in consequence of his troubles and the money he disburses for his client, has a right to be paid out of the decree, and has a lien upon it ;" and the rule was more fully defined in Ormond agt. Tate, (1 *East.* 464,). " An attorney has a lien upon a sum awarded in favor of his client, as well as if recovered by judgment; and if after notice to the defendant, the latter pay it over to the plaintiff, the plaintiff's attorney may compel a repayment of it to himself, and he will not be prejudiced by a collusive release from the plaintiff to the defendant ;" and the rule was finally carried so far in the King's Bench, that that court refused to allow the defendant to set off to the prejudice of the plaintiff's attorney costs recovered by the defendant against the plaintiff in another action.

The Court of Common Pleas, however, refused to go this length, and allowed a set off in all such cases, holding that the lien of the attorney was subject to, and must give way to the equitable rights of the parties; that it could not be permitted to interfere with their right to set off one claim against another. (2 *Black.* 869; 1 *H. Black.* 23.; 2 *Id.* 440; 2 *Black.* 827; 2 *B. and A.* 28, 587.; 1 *N. R.* 228; 4 *Taunton*, 632; *Douglas*, 238; 4 *T. R.* 465; 5 *Id.* 561; 8 *Id.* 69; *Forrester's R.* 109; 8 *East.* 362.; 1 *Taunton*, 341; 5 *Id.* 429; 1 *Aust.* 287; 1 *M. and S.* 240.; 1 *East.* 464; and 4 *Watts*, 340.) The two courts thus stood in conflict until the adoption of the new rules in 1833, when the rule of the King's Bench was made applicable to all the courts. The lien of the attorney upon the judgment for his

costs was recognised in this state at an early period; and in Spence agt. White, (1 *Johnson's Cases*, 102,) and Shepherd agt. Watson, (3 *Caines*, 165,) the rule of the Common Pleas upholding it subject to the equitable rights of the parties was adopted in preference to the rule of the King's Bench. By the law, therefore, as it existed in this state before the passage of the Code, an attorney had a lien for his costs subject to the equitable rights of the parties; and if the party against whom the judgment was recovered paid the costs to the opposite party after he had received notice of the attorney's lien, it was regarded as a fraud upon the attorney's rights, and the court would enforce the judgment to the extent of the attorney's lien. People agt. Manning, (13 *Wend.* 652;) Martin agt. Hawks, (15 *Johnson's R.* 405.) Has this right been taken away by the Code?

Two reasons are assigned by the learned justices, from which they infer that it no longer exists. First, because the costs are now given to the party, and not to the attorney; and, second, because his compensation is no longer measured by the fee-bill, but rests in contract. In respect to the first, the Code has made no change in the law; the costs always belonged to the party, and not to the attorney. Before the Statute of Gloucester, (6 *Edward I., Evans' Statute P.*,) the prevailing party was not entitled to recover costs; but though costs were not given by the common law *eo nomine*, they were always included or taken into account in fixing the quantum of damages in all actions where damages were recoverable; and the Statute of Gloucester was passed to enable the prevailing party to recover them, not only in actions where damages were recoverable, but in other actions. The words of the statute are, "the demandant may recover the costs of the suit together with damages." And after the statute the costs were entered upon the roll as increased damages, or, as usually expressed in the record, damages adjudged of increase. The costs, therefore, were recovered by the party, and belonged to the party, and not to the attorney. (*Hallock on Costs*, 525.) By the act passed in this state "concerning costs," (1 *R. S.* 343,) they were also given to the party. The words of the first section are: "If any person shall sue in

any court of record in the state, in any action, &c., and shall recover damages in such action, then the plaintiff or demandant shall have judgment to recover costs against the defendant." And in the ninth section, which provides for the plaintiff's recovery upon writ of *scire facias* and other cases, the words are : " And shall likewise recover his costs of suit." So in the provision made in the second section in the event of a judgment for the defendant: " He shall have a judgment for his costs against the plaintiff." It is the same in the first section of chapter 10, (2 *R. S.*, page 703, 3d edition :) " The plaintiff shall pay to the defendant his costs to be taxed." In the third section : " If the plaintiff recover judgment, &c., he shall recover the costs allowed for services in the court :" and so throughout the many provisions of the first title of the chapter, the costs are uniformly referred to as the costs of the party. The second title merely regulates the amount which shall be allowed for services thereafter done or performed by officers of the court. It prescribes what sum shall be allowed for services performed by attorneys or counsellors : that is, allowed to the plaintiff or defendant who recovers judgment. There is no provision which declares that it shall be allowed or given to the attorney. On the contrary, it is given to the prevailing party for the services of the attorney he has employed ; and he, and not the attorney, recovers it in the judgment. Where he has employed no attorney, but conducts the suit himself in person, he cannot recover for his services. (Stewart agt. The New-York Common Pleas, 10 *Wend.* 597.) He can recover costs only when those services have been performed for him by an officer of the court. The Code, therefore, by giving to the prevailing party certain sums by way of indemnity for his expenses, has not in this respect changed the position of things. It does not take anything away from the attorney and give it to the party. It simply recognises the right of the party to be indemnified for his expenses, a right which was recognised and provided for by all the provisions of the statutes ; and it changed the mode in which that indemnity shall be ascertained and fixed, by substituting for the former tariff of fees, a new

measure of compensation. All that the attorney ever had was a lien upon the fund if it came into his hands, upon the papers in his hands, and upon the judgment; but the costs belonged to and was recovered by the party. It remains but to inquire whether the abolition by the Code of all statutes regulating the fees of attorneys—and of all rules or provisions of law preventing an attorney from agreeing with his client for his compensation, and leaving the measure of such compensation to the agreement of the parties, express or implied—has affected the attorney's lien. By the English practice the amount that the prevailing party was entitled to recover for the services of an attorney was determined by the taxing officer, and included in the judgment, and the amount thus fixed in the absence of a special agreement was regarded as the proper measure of compensation between the attorney and his client. In other cases, the party was bound to have the attorney's bill taxed within a month after it was served upon him; and the bill thus taxed was the measure of compensation in an action brought by the attorney against his client to recover for his services; or, if he omitted to tax, the bill was deemed conclusive as to the reasonableness of the charges, and he was not permitted to dispute the items upon the trial. Williams agt. Firth, (1 *Doug.* 197;) Hooper agt. Tile, (*Id.* 198 and note;) Anderson agt. May, (2 *B. and P.* 237.)

In this state the amount which an attorney might claim for his services, or which might be allowed for such services by the court, was made a matter of statute regulation by an act passed the 18th of February, 1789, in which it was provided that no officer or other person should exact, demand, ask, or be allowed any greater or other fee or reward, for or in respect to any service to be done or performed, than such as was therein specified. The act thus prescribes the sums that shall be allowed respectively for certain services. (*Jones and Varick's Edition of Laws of New-York*, vol. 2, 417.) And the regulation of these sums, or rather the adjustment of a tariff of fees, has been the subject of constant statutory provision from that time down to the passage of the Code. It was accordingly held that, as the

statute marked out and particularized the costs which could be recovered for the services of an attorney, and had forbidden attorneys to exact or demand any more or other than such as was specified by the statute, an attorney in an action against his client for his costs was restricted to the amount which was recoverable as costs in the action. Scott and Wigram agt. Elmendorf, (12 *J. R.* 315,) in which case the defendant obtained a verdict against the plaintiff. The defendant's attorneys sued their client for their costs; and it was held that as the plaintiff, by the statute, could have recovered but Common Pleas costs, the attorneys were limited to that amount; and it was doubted, in case they had made an agreement with their client for a greater sum, if, under the statute, they could have recovered it. All these statutes have been abolished by the Code, and the attorney's compensation is now left to the agreement of the parties, express or implied. But the repeal of these statutes cannot affect the attorney's right to a lien upon the judgment. He did not derive his lien from them. It existed long before any fee-bill was enacted. They regulated or fixed the amount which he could recover for his services in certain cases, and in that respect necessarily limited the extent of his lien, but did not create it. For services not embraced in these statutes he had a lien upon the papers, or upon the funds of his client in his hands, and his lien upon the judgment was limited by them to a certain amount prescribed for services rendered in obtaining it. All that the Code has done has been to abolish the fee-bill, and to take away all restraints upon attorneys making agreements with their clients for their services. It has left the attorney to agree with his client for a greater or less sum than is given to the party by way of indemnity for his expenses; but this does not touch the attorney's lien. His right to it was established by a long current of authority; and unless it is expressly taken away, or is wholly inconsistent with the change that the Code has made respecting costs, it may still exist. I cannot see how this legislation can be regarded as abolishing it, or affecting it at all. The right to a lien for services rendered is a distinct thing. The measure by which

the value of those services is to be ascertained is another. The latter has been made the subject of statutory regulation, 'the former has not. The statute has not interfered with the right of lien except to limit the extent of it, and when that limitation is removed by the repeal of all statutes regulating the fees of attorneys, the right of lien upon the authority of adjudged cases stands precisely as it stood before those statutes were enacted.

Justice WILLARD thinks the reason for upholding the lien does not exist, because the attorney's compensation is no longer measured by the fee-bill, but rests in contract; but this has nothing to do with the reason upon which the right to the lien is founded. The reason why an attorney has a lien is, that he has contributed by his labor and skill to the obtaining of the judgment. (Read agt. Dupper, 6 T. R. 361.) And the manner in which the value of his services shall be ascertained, whether regulated and fixed by statute, or left to the private agreement of the parties, is entirely independent of his right to the lien. The learned justice seems to think, that as the rate of compensation between attorney and client was fixed by positive provision of law, the lien of the attorney can no longer exist, because the amount or extent of it is no longer regulated by statute. The fact that it must now be ascertained by other means, by proof of the private agreement of the parties, or by proof of a *quantum meruit*, seems to be regarded as a sufficient reason for supposing that a right has been taken away that in no wise depended upon the precise amount or value of the services. The same reasoning would apply with equal force against the right of lien in any case where the demand was unliquidated. It is not essential to the existence of a lien that the amount should be liquidated; it may exist as well in respect to a demand unliquidated as to one that is liquidated. (*Cross on Lien.*) The tailor who repairs a garment has a lien upon it to the extent of the value of his labor, though no agreement has been made as to the price; and so may the attorney have a lien upon the judgment to the extent of the value of his labour, where the parties have made no agreement as to the rate of compensation. It is possible that our courts, under the

Code, might, in the absence of any proof of the private under-standing of the parties, regard the sum given to the prevailing party by way of indemnity for his expenses, as the proper measure of compensation in an action brought by an attorney against his client, or in determining the amount or extent of the attorney's lien upon the judgment, instead of proof of the actual value of the service rendered by him in obtaining it. Be that as it may, or whatever may be the means hereafter adopted for ascertaining the amount or extent of the lien, I think that it is quite clear that the right to it remains unimpaired, and that it is the duty of courts to enforce and protect it.

The order was appealable. It was made upon a summary application after judgment, and in a matter affecting a substantial right. (*Code*, § 249, *sub.* 5.) The order appealed from must be reversed and the motion granted, but without costs.

WOODRUFF, Judge. I concur in the result to which Judge DALY has arrived.

INGRAHAM, First Judge. I do not assent to the above conclusions, for the reasons stated by me on the motion originally. It is unnecessary for me to repeat them, as my brethren are agreed that the attorney's lien still remains.

NOTE.—In *ex parte* Kyle, (1 *California Reports*, 331,) it was held that an attorney had no lien upon a judgment recovered by him in favor of his client for a *quantum meruit* compensation for his services; that such lien only extended to costs given by statute.