WESTCHESTER COUNTY.—HON. OWEN T. COFFIN,
SURROGATE.—March, 1886.

SMITH *v*. CENTRAL TRUST CO.

*In the matter of the judicial settlement of the account
of the* CENTRAL TRUST COMPANY, *as trustee under
the will of* ELIZABETH R. UNDERHILL, *deceased.*

The clause added, in 1879, to Code Civ. Pro., § 66,—enacting that, "from
the commencement of an action, or the service of an answer contain-
ing a counterclaim, the attorney who appears for a party has a lien
upon his client's cause of action or counterclaim, which attaches to a
verdict, report, decision or judgment, in his client's favor, and the pro-
ceeds thereof, in whosesoever hands they may come"—has no applica-
tion to Surrogates' courts, since in those tribunals actions, and coun-
terclaims therein, are unknown.
Eisner v. Avery, 2 *Dem.*, 466, on this point—disapproved.
*It seems*, that the lien, established by the clause quoted, is for the services
of the attorney in the action, the value thereof being fixed by agree-
ment express or implied; and is confined to actions for the recovery of
money, or wherein a pecuniary demand is asserted by way of counter-
claim.
A claim, by an attorney against his client, for services rendered to the lat-
ter in a special proceeding in a Surrogate's court,—based upon an
alleged agreement to pay the sum demanded, which the client denies,—
raises an issue for a jury, and which that court is incompetent to try.
Upon an accounting by the successor of the executor of decedent's will,
the attorneys who had appeared for two beneficiaries, G. and V., on
an accounting by the executor, claimed a lien for their services on the
amount of their clients' legacies, as determined by the decree entered
in the latter proceeding, to the extent of $1,000, beyond the costs
awarded by that decree, and presented an affidavit setting forth that,
about two years after the decree was entered, they had presented a bill
for that sum to G., who had agreed to pay the same. This agreement
was denied by G., in an affidavit averring that the attorneys had under-
taken to perform the services in question for the amount of costs to
be allowed by the decree.—
*Held*, as matter of law, that no lien existed for the sum demanded by the
attorneys, and that payment thereof could not be awarded, the court
having no power to try the issues of fact presented by the affidavits.

ON the return day of the citation in this matter, Smith & Randall, attorneys at law, represented that they had acted as such for Barnard R. Guion and Mary T. Van Voorhis, legatees, on an accounting of the executor (since resigned) of the will of decedent, in which a decree was entered in 1882 (see 1 *Dem.*, 306); that, as such attorneys, they had a lien upon the amounts of the respective legacies of said Guion and Mrs. Van Voorhis, as determined by the decree, over and above the amount of the costs allowed to their clients as fixed thereby, to the extent of $1,000, of which they had given the Central Trust Company, now trustee, notice. Mr. Randall submitted an affidavit made by him, in which he deposed that, in or about July, 1884, and after the entry of the decree, he gave a bill for such services, amounting to $1,000, to Guion, who agreed to pay the same, but who had failed to pay it or any part thereof. Mr. Guion filed an affidavit in which he denied ever having agreed to pay any such bill, and averred that Smith & Randall agreed, when they undertook the case, that the allowance to be made by the Surrogate should cover their entire charge. It did not appear that any agreement was made with Mrs. Van Voorhis.

SMITH & RANDALL, *in person.*

ALEX. THAIN, *for Guion and Van Voorhis.*

THE SURROGATE.—It does not seem that, at common law, an attorney had a lien upon the judgment recovered by him for his client, for his costs and compensation. Such lien was established by the courts

as an equitable principle, for the protection of their officers. In the time of Lord MANSFIELD, the rule was not then of ancient origin. It has been followed by our courts, consistently, down to the adoption of our Code of practice, when it was enacted that the compensation of an attorney should be governed by the agreement, express or implied, with the client. This provision induced a decision by the learned Judge DALY, in Ward v. Syme (9 *How. Pr.*, 16), to the effect that the attorney's lien was not limited to the amount of costs inserted in the judgment, but extended also to the amount of compensation agreed upon between the attorney and client, and if there were no agreement, then to what he might be entitled to, on a *quantum meruit*, in addition. This doctrine, however, was disapproved by the Supreme court in Haight v. Holcomb (16 *How. Pr.*, 173), where it was held that the lien was restricted to what appeared as costs on the judgment roll. But this view was likewise disapproved in Marshall v. Meech (54 *N. Y.*, 140), the Court of Appeals there holding that such lien extended also to any sum which the client had agreed his attorney should have as a compensation for his services; that, to the extent of the taxed costs entered in the judgment, the judgment itself was legal notice of the lien, but as to the further compensation, fixed by agreement, express or implied, notice had to be given in order to protect the lien. This was approved in Wright v. Wright (70 *N. Y.*, 98), and in Coughlin v. R. R. Co. (71 *N. Y.*, 443 [1877]).

Following these cases, in 1879, section 66 of the Code of Civil Procedure was amended by adding

thereto these clauses : " From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment." This does not state, in words, what the attorney's lien is for, but as the section, before the addition of the foregoing amendment, provided that " the compensation of an attorney or counsellor for his services, is governed by agreement, express or implied, which is not restrained by law," it must be presumed that the lien is for such services, the value thereof being fixed by such agreement. The amendment recognized, by positive enactment, the lien which the courts had already declared to exist, and limited it to cases where an *action* was commenced, or a counterclaim was interposed in such action, and provided, in effect, that the lien for the sum agreed upon should not be affected by want of notice thereof.

It is not necessary to discuss the question as to whether this amendment was intended to include a lien for the costs embraced in the judgment roll, as well as the compensation, beyond those costs, covered by the sanctioned agreement between attorney and client, because it is not claimed that the costs, as adjusted, are here involved. That it does, by positive enactment, establish such a lien for the agreed compensation, there can be no question, and it would

seem equally beyond doubt that no such lien can exist, except where an action has been commenced for the recovery of money, or a sum of money has, in an answer, been sought to be established or recovered by way of counterclaim. Hence, as the attorneys base their claim to recover upon § 66 of the Code, as it now stands, it would seem that they must fail, as actions and counterclaims therein are unknown in Surrogates' courts, where all proceedings are special proceedings.

The case of Eisner v. Avery (2 *Dem.*, 466) has been cited as an authority to show that the section in question applies to such courts. It is with much self-distrustful hesitation that I feel constrained to dissent from any view of administration law taken by Surrogate ROLLINS, but after much reflection I find I must disagree with him on this point. There the contention related solely to the allowance as fixed by the decree. The decision of the point was not material to the determination of that case. Had it been so, the learned Surrogate would have examined it with that diligent research, and bestowed upon it that careful consideration for which his opinions are distinguished. His *dictum* seems to be founded upon the opinion of the Supreme court in Flint v. Van Dusen (26 *Hun*, 606), where the court held that the attorney's services, having been rendered before Surrogates' courts became courts of record, no lien existed. It did not refer to, nor consider the question of the applicability of § 66 to these courts, although it might be inferred, from the language employed, that it was regarded as so applicable. I

fail to discover how the fact of these courts having become courts of record affects the question.

The point has here been considered with some care, not because the determination of this matter turns wholly upon it, but because of its importance as an abstract question, likely to arise in future cases.

There can be no lien for an attorney's compensation, beyond the taxed costs, based upon an agreement, express or implied, made after judgment. The law, fairly construed, gives none unless the agreement between attorney and client be made before, or pending the action. Here, the attorneys claim such lien, founded upon an alleged agreement made about two years after the entry of the decree which terminated the litigation. It is established only by showing that a bill for $1,000 was then handed to Mr. Guion, who agreed to pay it. Under such circumstances, surely no lien could be created, were it a case for it. But Guion denies that there ever was such agreement made by him. This raises an issue which this court could not try. It is clearly a case for a court and jury, and however such an action might terminate, the question of a lien would not be an element to be considered, because, as I have endeavored to show, no such lien exists. But again, Guion's affidavit shows that the attorneys agreed to accept, in full for their services, such allowance as should be made to them by the court. An allowance of a large amount was made to them, after a protracted litigation, which it is understood the attorneys received.

The papers before me do not disclose any ground

of the claim, or the extent thereof, against Mrs. Van Voorhis, if indeed any claim, distinct from that against Mr. Guion, be made.

My conclusions are that § 66 has no application to this court; and that, if it had, the court has no power to try the issues of fact set forth in the affidavits.