## Case No. 1,984.

### In re BROWN.

[1 N. Y. Leg. Obs. 69; 5 Law Rep. 324.][1]

District Court, S. D. New York. Aug., 1842.

BANKRUPTCY—ATTORNEYS' FEES—LIEN.

A petition for a decree in bankruptcy was filed by B., on the 18th of February, in which

[1] [5 Law Rep. 324, contains only a partial report.]

were inserted three promissory notes, amounting to $400. On the 7th of February preceding, a suit in chancery had been commenced against B. and his former partner, P. At the time the suit was commenced, P. delivered to B.'s attorney, (who is the attorney for prosecuting B.'s petition in bankruptcy,) at B.'s request, the notes in question, for the purpose of being given over to the general assignee. *Held*, that B.'s attorney has a lien on the notes to satisfy his taxable costs, including solicitor and counsel fees, up to the time B.'s petition for a decree in bankruptcy was presented, and also the cost of the reference.

[Cited in Re Wilson, 12 Fed. 238.]

[In bankruptcy. Petition for decree in the matter of Orrin D. Brown. The attorney for the bankrupt claimed a lien on certain notes belonging to the bankrupt estate, which the court allowed.]

BETTS, District Judge. This is a question of lien on a bankrupt's effects for costs in the court of chancery of both counsel and solicitor. The petitioner named in his inventory, as part of his effects, three promissory notes drawn by R. F. Harrison, amounting to $400. The petition was prepared by the attorney claiming the lien, and was filed the 18th of February. On the 7th of February a suit in chancery had been commenced against the bankrupt and his former partner, Pinkney, and the attorney was employed to defend that suit. At the same time the notes in question were put in the attorney's hands by Pinkney, at the bankrupt's request, and, according to the bankrupt's testimony, for the purpose, as he believes, of being given over to his assignee in bankruptcy: though as soon as he knew they were in the attorney's hands he expressed a wish that the attorney might get his costs out of them. The question presented is whether the attorney can retain these notes to satisfy his costs in the chancery suit, including solicitor and counsel fees.

The right of lien on the part of an attorney in respect to papers of his client not appertaining to the case in which his charges accrue, is unquestioned. It is placed in the English and American courts upon a similar footing. 2 Kent, Comm. 640; 2 Petersd. Abr. 461; Cross, Liens, c. 15; 12 Wend. 261; 4 Paige, 501; Id. 647; 1 Paige, 622. And it is unrestricted except when the papers are carried and deposited under some special trust or qualification, which amounts to a waiver of lien by the attorney receiving them, or which prevents its vesting by the special character of their delivery. These distinctions are considered and marked by the cases referred to in the authorities cited. It becomes necessary, then, only to consider the special circumstances of the deposit of these notes, and decide whether they were such as to withdraw the case from the operation of the general rule of lien. The Case of Foster [Case No. 4,960], elaborately discussed by Judge Story, does not

trench on this doctrine. As between the attorney and his client, there could be no question upon the facts of the right to retain, the manner the notes were deposited and received supplying no evidence of a waiver of the lien in behalf of the bankrupt. Indeed, the court would probably demand more in every case, in order to cut off such security, than a mere intimation that the deposit is to answer a particular purpose or the signification of a desire or expectation by the client, when he places his papers with his lawyer, that they may not be chargeable for balances due or to become due him. An express agreement should be obtained from the attorney, or at least strong circumstances be proved, conducing to show his consent to such exemption. If the controversy was between attorney and client, upon the state of facts presented by the case, there could therefore be no ground for hesitation in declaring the right of lien unimpaired. The bankrupt act [1841], section 2 [5 Stat. 442], in terms recognizes and confirms all liens valid by the local law; and accordingly the assignee in this question, if he is not limited to the mere rights of the bankrupt in this behalf, stands on no better ground than any third party in interest would occupy. The statute gives him no advantages because of his official character, and he must therefore show that, upon general principles, the lien did not attach or was waived in respect to the creditors whom he represents. Mr. Pinkney, the person who delivered the notes to the attorney, has not been examined, but it is manifest from the direct and cross examination of the bankrupt on this point that the understanding between him and the attorney subsequently was, that the notes had been placed there to go into the hands of the assignee. The bankrupt afterwards, and before the petition was filed, expressed his hopes that the attorney might get his costs out of them, as he had no other means to pay him: all which shows plainly enough that the bankrupt understood and intended, when the notes were passed to the attorney, that they should be devoted to the assignee, and that the attorney should be his depositary agent for that purpose. His own intention is not to render this so. The acquiescence of the attorney must be also established. The fact supposed to imply in such assent is, that the inventory of the bankrupt setting forth these notes as part of his estate was drawn up and filed under the direction of the attorney. It is urged that this act is inconsistent with the attorney's possessing them under a right of lien, or believing that he did, and necessarily imports that he took them as stake holder for the assignee and for the benefit of the creditors of the bankrupt. The fact is no doubt evidence tending to that conclusion, but it is by no means of a decisive character. The right of property in the notes still remained in the bankrupt, and his attorney might, consistently with an intent to maintain his own security on them, set them out as part of the bankrupt's estate. Supposing he had execution out and a lien thereby on the bankrupt's personal property, placing such personal property on an inventory as belonging to the bankrupt would not be regarded as proving an intent to relinquish the execution lien. It at most would be but equivocal evidence, and would require some further act or declaration to give point or certainty to it. Furthermore, this lien is but a contingent claim, and might never interfere with the disposition of the notes by the assignee. If the costs protected by it had been otherwise satisfied, or the suit had ceased without making costs, these papers would belong absolutely to the bankrupt, and accordingly he ought in strictness to set them forth in his inventory as part of his estate; and although his schedule would have furnished a more exact representation of the state of his affairs if he had specified this contingent liability, yet his omitting to do so without knowledge whether the notes would be ultimately chargeable with it or not, and without design to deceive or mislead his creditors, would, on his part, be no such false statement of his effects as to vitiate his proceedings. Such statement of these assets would not be regarded incompatible with their standing as a contingent or collateral security for costs that might accrue against him. What the principal might do without compromitting himself, the attorney might aid in doing, and not be held as called upon to disaffirm, or as in any way therein affirming by his silence, such acts as inconsistent with his right of lien. Putting the case in a stronger point of view, that the attorney was mortgagee of real or personal estate, which the bankrupt set forth in his inventory without notice of the mortgage lien, such particular could never divest the security of the attorney. It would not prevent that condition in his relationship to the subject matter which compelled him to speak, or afterwards be precluded from asserting any right incompatible with the representation on the schedules, because the proceeding has no connection with the sale or disposition of the effects, whereby a bona fide or innocent party might be induced to purchase or receive them by means of such tacit assent to the full right of property in the bankrupt. The lien of attorneys, when it justly occurs, is a privilege favoured by the policy of the law of this state (12 Wend. 262; 6 Johns. Ch. 317; 4 Cow. 416); and no rule of decision is exacted by the bankrupt law that necessarily interferes with that principle. I think it a plain doctrine, deducible from the cases, that the privilege of the attorney will not be withdrawn from him in favour of the client without a manifest intent on his part to waive it; and the bankrupt law gives to creditors, in this behalf,

no higher rights than could be exercised by the bankrupt. By solemnly asserting the validity of antecedent liens, the act would seem to import that it was alike its policy to uphold preferences of that character, as to establish equality in the distribution of the bankrupt's estate in other respects. I do not discuss the effect of the desire expressed by the bankrupt to the attorney previous to filing his petition, that the notes might serve as means of paying his costs, because I consider the lien perfect without regard to the intent of the bankrupt, and I find no satisfactory evidence that it was subsequently waived, directly or by implication, on the part of the attorney.

The next consideration is the extent of that privilege, and whether it terminates on the presentation of the petition, or continues to run so long as the business to which it appertains remains in charge of the attorney? The point was, in effect, decided by the circuit court in Chapman's Case [unreported]. The court held the petition and proceedings in bankruptcy to be a dedication of the bankrupt's estate to the purposes of the act, and, if he was ultimately decreed bankrupt, that his assignee took every species of interest existing in him, both at the time of the decree and when the petition was filed. The power and interest of the bankrupt in respect to his estate ceased on the presentation of his petition, and he could not be allowed to appropriate any part of it, in satisfaction of existing demands or for his own necessities. Subsequent demands, from whatever source they accrue, can take no preference over other debts, unless they came within the provisions of the fifth section. The petitioner, by the terms of the act, is deemed a bankrupt, on his voluntary representation of his inability to pay his debts, and, after he is also so declared by the court, the decree will necessarily retroact so as to cover all the estate belonging to him at the time of his becoming bankrupt. All persons, therefore, dealing with him, stand upon the same footing, whether it be after the petition filed or the decree rendered. The circuit court of the first circuit has decided that no process of law from a state court can be allowed to arrest the property of a bankrupt after his petition filed (5 Law Rep. 56) [Ex parte Foster, supra], considering it entirely subject to the disposal of the court of bankruptcy from that period. The courts in this district do not exercise a like remedy, but they proceed upon the recognition in part of the principle upon which that relief is based in the first circuit; it is here held that the property of the bankrupt is placed provisionally under the custody of the law by the act of congress, to be rendered entirely subordinate to that law, when a decree of bankruptcy shall be rendered. The petition, to most purposes under our law, has an effect equivalent to the commission in England. The party is by it brought under the jurisdiction of the court, and, as it marks the period of bankruptcy, the estate of the bankrupt, so soon as the bankruptcy is decreed, is subjected to the operation of the law from the same period. In England, the attorney's lien on a bankrupt's papers for business done anterior to the bankruptcy is preserved to him (4 Taunt. 807; 2 Barn. & C. 616); and so it is if the proceedings are continued to judgment after the bankruptcy, on a suit commenced before, notwithstanding the money belongs exclusively to the assignees (Cross, Liens, 210); but that is manifestly because his services are for the benefit of the estate. After a fiat in bankruptcy, the attorney is regarded as having no further lien on papers of which he had the right of custody to that time. Cross, Liens, 208; 1 Rose, 395; 2 Rose, 19. The result of my reflections upon the case is, that the attorney has a lien upon those notes for all costs accrued in his business for the bankrupt anterior to the presentation of the petition, and the privilege terminates at that period. He is to be regarded as then acting on the individual responsibility of his client; the costs accruing afterwards have no preference, they would not even be a debt provable under the bankruptcy.

The remaining inquiry is whether the lien is limited to solicitors' or attorneys' fees eo nomine, or extends to professional services as counsel also. The principle upon which the right of lien rests is not peculiar to the relationship of client and attorney. It grows out of the common law privilege that every operative has to retain the materials placed with him, and upon which his services are rendered, until those services are compensated. 4 Taunt. 807; 5 Law Rep. 55 [Ex parte Foster, supra]. With the mechanic the implied hypothecation is restricted to the articles upon which his labor or skill is expended. Story, Bailm. 286, 287. But factors may retain a consignment to reimburse antecedent balances (Story, Ag.), and for like reason attorneys are allowed to hold papers placed with them by a client, for whatever cause, until satisfaction of all personal dues from him or his general agency of attorney (Cross, Liens, 108). No case in the English books refers to any privilege of counsel of this character. This is not for want of ability to maintain an action for his compensation, but because there is no such privity between him and the client, awaiting to the course of practice there, as to raise an implication that the papers of the client were to be in his custody at all, much less to be there as a guaranty for the payment of his compensation: and it may also be added, probably for the further reason, that the law will not create by implication cumulative liens, but will call for direct evidence of a double hypothecation to different parties for the same general object. The methods of business in the courts of that

country supply an additional reason against the existence of a lien to counsel, for he is no attorney in the cause, nor does he act in that capacity, and abstracts of papers, and not the originals, are put into his hands for the purpose of consultation or argument, and it will rarely happen that the papers of a client fall within his control except in the progress of a nisi prius trial.

These considerations may furnish adequate reasons for a rule excluding the lien of counsel in England, and yet, in application to our system of business, lay no foundation for the entire recognition of such rule here. In this case the counsel was copartner as attorney with the person appearing in that character, and our laws supply counsel a tariff of compensation, which is taxed and recovered in the same manner as the fees of an attorney. The papers being confided to the same individual for services in both capacities, the same reason that imparts a lien to him as attorney would raise and uphold it also to him as counsel. I do not discuss the bearing of the doctrine in cases where the counsel is not attorney or solicitor in the cause, and where the papers come to him through the attorney and not from the client. The English rule might perhaps fitly be applied in such a case, and the counsel be left to his general remedy, which under our laws would give him a right to enforce payment of his compensation by suit at law. 23 Wend. 57; 2 Dana, 238; 1 McCord, 149; 4 Watts, 334; 5 Serg. & R. 412; Add. 49; 5 Vt. 338. But, for the same reason that an attorney or solicitor has a lien for his taxable cost, I think the counsel, when entitled to the lien, can claim it for no more than the taxable items of his services, at least where the rights of third parties intervene. To this extent the law adjusts and liquidates the contract between client and counsel, and when he adds to his claims as attorney those of counsel also, it is meet that the privilege accorded in the one case should reach to no greater extent in the other. It seems to me every principle upon which this species of lien is conceded is fully satisfied by allowing it to cover those demands which are fixed by law, and are the subjects of taxation, and if in any case, as against the client himself, the tacit hypothecation may be retained to abide and cover a verdict upon quantum meruit claims, it would be sanctioned by the courts, but with great hesitation and circumspection when interests and rights become vested in those securities on behalf of third parties and strangers. Ordinarily a client's papers in the hands of his lawyer serve as security for existing demands, and to cover also those that may subsequently arise during the continuance of the deposit; acting in that way in the capacity of a movable or opening mortgage embracing prospective liabilities alike with those subsisting at the time. Plainly the operation of the security is limited to the interests of those immediate parties, and cannot thus supersede the rights of others accruing in the meantime. It is exceedingly doubtful whether an express mortgage of real or personal estate would be allowed to cover future advances to the prejudice of intervening creditors. 4 Kent, Comm. 176. If a doubt might be raised in respect to an express mortgage when the party stipulated security in terms to act prospectively, I should think a mere tacit pledge should never receive a construction giving it an ascendency over the rights of third parties, without means on their part to arrest or limit it.

I shall declare in this case that the notes are security for taxable costs of counsel and attorney up to the time the bankrupt's petition was presented, and also the costs of the reference ordered on this application. The notes are to be delivered to the assignee; out of the first proceeds of which he shall pay the costs aforesaid, and apply the balance, if any, to the general purposes of the assignment.