## In re Wilson & Greig, Bankrupts.

(District Court, S. D. New York.   June 1, 1882.)

1. **Attorney at Law—Lien of.**

   An attorney's lien upon an uncollected judgment is limited to his taxable costs and reasonable compensation in the cause itself, or in the same subject-matter, and may be enforced by active proceedings.

2. **Same—Depends on Possession.**

   An attorney's general lien for the balance of his entire account extending to all papers, documents, and vouchers in his possession, depends wholly upon possession, and is a right merely to retain such papers till his bill is paid, and cannot be otherwise actively enforced.

3. **Same—Extent of.**

   Such a general lien does not extend to a judgment uncollected by the attorney, so as to bind the proceeds, when collected by the judgment creditor or his assignee, or other attorneys who may collect the same, without the use of papers in the hands of the original attorney.

4. **Attorney's Fees—Agreement of Assignee—General Lien.**

   Where an assignee in bankruptcy, desiring to change the attorneys in legal proceedings which the bankrupt had instituted, received from the latter's attorneys all the bankrupt papers and vouchers, including substitution upon outstanding executions on judgments previously recovered, agreeing to satisfy the attorney's lien out of the first moneys collected in the pending suits, and the executions were afterwards returned unsatisfied, and the other attorneys of the assignee subsequently collected the first two judgments through supplementary proceedings in the nature of a creditor's bill, upon which the former attorney claimed a lien for his costs and counsel fees in a third judgment, which remained wholly uncollected, *held*, that the agreement was not binding upon the bankrupt's estate to any greater extent than the legal lien of the attorney at the time the agreement was made; that he had no lien upon the proceeds of the first two judgments for his costs and counsel fees in the third judgment, or for his general bill, the first judgments having been collected without the use of any papers in the attorney's hands at the time of the agreement; and that upon the suits not in judgment, and the papers necessary in the prosecution thereof, the attorney had a general lien; that the agreement was valid and binding to that extent, and certain proceeds of such suits having been collected by means of papers surrendered under it, the attorney was entitled to have such proceeds applied to his general bill.

   · Case of the *Bowling Green Savings Bank* v. *Todd*, 52 N. Y. 489, qualified.

5. **Same—Lien on Judgment.**

   An attorney's lien upon an uncollected judgment is not increased by subsequent services in independent matters.

Hearing on report of the register upon petition of J. H. Goodwin for payment of an attorney's lien.

The assignee of the bankrupts was appointed in June, 1879.   Prior thereto the petitioner had been employed by the bankrupts as their attorney in the prosecution of several suits which were pending at the time of the appointment of the assignee.   The petitioner, as

attorney, had also recovered for the bankrupts, in January, 1879, two judgments against one James Wilson by default upon promissory notes for about $877, upon which judgments executions were then in the hands of the sheriff uncollected. The assignee desiring to employ other attorneys in the prosecution of the suits pending, and the petitioner claiming a general lien upon all the papers in his hands for his costs and services, an agreement was made between him and the assignee, on June 7, 1879, reciting that the petitioner had "commenced a number of suits against persons, debtors of said Wilson & Greig, and which said suits have not been finally concluded; that the assignee recognized the petitioner's lien thereon, and desired all papers therein to be surrendered to other attorneys to be substituted;" and providing that the papers in said suits should all be transferred, and substitutions given, and that the petitioner's lien should not be waived thereby; but that the "lien should be first paid and satisfied by the first moneys coming into the hands of said assignee out of said suits, a list of which is annexed." Among the papers transferred were those in the two judgments against James Wilson, which, in the receipt given by the substituted attorneys, are recited as given under the terms and conditions of the agreement above referred to. The executions then outstanding upon these two judgments were afterwards returned wholly unsatisfied. Blumenstiel & Hirsch, the substituted attorneys, subsequently, upon proceedings supplementary to execution, in the nature of a creditor's bill, recovered the whole amount of those two judgments, being about $1,900.

A third judgment had also been recovered by the petitioner, as attorney for the bankrupt, against Hine, Phillips, and others, upon charges of embezzlement, in which the petitioner's taxed costs were $326.69, and in which his services were reasonably worth, as reported by the register, $500 more, making $826.69 for his bill in that suit; and the papers in that case were also among those transferred and receipted for. In the various other pending suits transferred the sum of $144.57 only was collected by the assignee. All of the petitioner's claims have been paid except his bill for the recovery of the last-mentioned judgment, upon which he has received only $43.86, leaving $782.83 justly owing to him for his services in that suit.

The petitioner claimed a general lien upon each and all of the suits and judgments transferred for his entire bill, and that he was entitled to be paid what was due to him upon the third judgment out of the proceeds collected by Blumenstiel & Hirsch upon the two

prior judgments against James Wilson. The assignee refusing to recognize this claim, the matter, upon petition, was referred to the register, by whose report the above facts appear.

*S. B. Hamburger,* for claimants.

*Blumenstiel & Hirsch,* for assignee.

BROWN, D. J. It is not disputed that the sum of $826.69 would be a fair compensation to the petitioner for his services to the bankrupts in obtaining the judgment against Hine and Phillips in May, 1879. Nothing, however, has been recovered thereon. All claims of the petitioner, aside from those connected with that judgment, have been paid, and the only question presented is whether the petitioner has a right to be paid the balance of $782.83 due to him for his services and costs in obtaining this judgment out of the proceeds collected by the assignee, through his subsequent attorneys, upon the two Wilson judgments recovered in January, 1879.

The effect of the agreement of June 7, 1879, between the assignee and the petitioner, was to preserve whatever lien or equitable rights the petitioner then had. It was sufficient for this purpose; it was not intended for any other purpose; it was not approved by the court; and if its terms were in fact such as to enlarge the petitioner's claims beyond his then existing legal lien, it would not bind the bankrupts' estate, and the petitioner would be obliged to resort to his personal remedy against the assignee. The assignee, however, took the bankrupts' estate charged with whatever legal or equitable lien existed against it in favor of the petitioner, and by the agreement then made these liens were preserved as they existed at that date.

On the part of the assignee it was contended that nothing having been collected by the petitioner upon the two judgments against James Wilson, the attorney's lien thereon was limited to his taxed costs and reasonable compensation in obtaining those judgments. The petitioner contends that his general lien for his whole bill, which legally attached upon the papers in his hands, including the notes upon which the judgments were maintained, followed the judgments and legally bound whatever money was subsequently collected thereon by the assignee.

After examination of the numerous authorities on this subject, English and American, I am satisfied that the claim of the petitioner cannot be sustained, and that an attorney has no general lien upon an uncollected judgment for services in other suits, but only a particular lien for his costs and compensation in that particular cause.

An attorney's lien, as now generally recognized, is of two kinds: *First*, a general lien resting wholly upon possession, which is a mere right to *retain*, until his whole bill is paid, all papers, deeds, vouchers, etc., in his possession upon which, or in connection with which, he has expended money or given his professional services. This "retaining lien" is a general one for whatever may be due to him; and, though a client may change his attorney at will, if the latter be without fault and willing to proceed in pending causes, none of the papers or vouchers can ordinarily be withdrawn from him except upon payment of his entire bill for professional services. *In re Paschal*, 10 Wall. 483, 493–6; *In re Brown*, 1 N. Y. Leg. Obs. 69; *In re Broomhead*, 5 Dowl. & L. 52; *Blunden* v. *Desart*, 2 Dru. & Warr. 423; *Ex parte Nesbitt*, 2 Sch. & Lef. 279; *Ex parte Sterling*, 16 Ves. 258; *Griffiths* v. *Griffiths*, 2 Hare, 592; *Ex parte Pemberton*, 18 Ves. 282; *Lord* v. *Wormleighton*, 1 Jacob, 580; *Bozon* v. *Bolland*, 4 Myl. & C. 354, 356; *Ex parte Yalden*, L. R. 4 Ch. Div. 129; *Colmer* v. *Ede*, 40 Law J. (N. S.) Chanc. 185; *Hough* v. *Edwards*, 1 Hurl. & N. 171; Cross, Lien, 216; Stokes, Attys.' Liens, 28, 38; 2 Kent, *641. This lien, like other mere possessory liens, is, however, purely passive, being a bare right to hold possession till payment.

The articles cannot be sold or parted with without loss of the lien, nor can any active proceedings be taken at law or in equity to procure payment of the debt out of the articles so held. Cross, Lien, 47, 48; *Thames Iron Works* v. *Patent Derrick Company*, 1 Johns. & H. 93; *The B. F. Woolsey*, 4 Fed. Rep. 552, 558. The statute of this state passed May 8, 1869, (Laws 1869, c. 738,) which was designed to afford means of realizing payment upon such mere possessory liens, applies only to liens "upon any *chattel* property." Mere choses in action, such as the notes or demands placed in the petitioner's hands for collection, are not "chattel property," (2 Bl. *387; *Ingalls* v. *Lord*, 1 Cow. 240; *Ransom* v. *Miner*, 3 Sandf. 692,) and therefore not within the statute. As this general lien of the attorney upon the notes and demands in suit depended wholly upon possession, and was a mere right of retention, incapable of any active proceedings to enforce payment, it could not be transferred, nor attach to the judgments obtained upon them or to any proceeds thereof, unless such proceeds came into the attorney's possession, which is not the fact in this case.

The second kind of lien which an attorney has is that existing upon a judgment recovered by him, or moneys payable thereon, or

upon some fund in court. This lien, so far as it extends, is not merely a passive lien, but entitles the attorney to take active steps to secure payment. It did not exist at common law. It is stated by Lord Mansfield to be not very ancient. 1 Doug. 104; Stokes, 3. It does not depend upon possession, but upon the favor of the court in protecting attorneys, as its own officers, by taking care, *ex æquo et bono*, that a "party should not run away with the fruits of the cause without satisfying the legal demands of the attorney by whose industry and expense those fruits were obtained." *Read* v. *Dupper*, 6 T. R. 361. As this equitable right rests solely upon the compensation due to the attorney for his services, and money expended in procuring the judgment or the fund secured, it is manifest that it cannot upon principle be extended beyond the services and expenses in the suit itself, or in any other proceedings by which the judgment or fund has been recovered, or in the same subject-matter.

The distinction between an attorney's "retaining lien" upon papers in his possession, and his "charging lien" upon a judgment or other fund, is carefully pointed out by the lord chancellor in *Bozon* v. *Bolland*, 4 Myl. & C. 354, 359. "The solicitor's claim upon the fund," he says, "has been called transferring the lien from the document to the fund recovered by its production. But there is no transfer; for the lien upon the deed remains as before, though perhaps of no value; and, whereas, the lien upon the deed could never have been actively enforced, the lien upon the fund, if established, would give a title to payment out of it. The active lien upon the fund, if it exists at all, is newly created, and the passive lien upon the deed continues as before. If the doctrine contended for were to prevail, the lien of the solicitor upon the fund realized would in most cases extend to his general professional demand, and not be confined, *as it always is, to the costs in the cause;* for it must very generally happen that the plaintiff's solicitor has in his hands the documents necessary to establish his client's title to the money."

In *Lann* v. *Church*, 4 Madd. 207, the vice-chancellor said that he "had not been able to find any case in which it had been held that a solicitor had any lien on the fund recovered in the cause, except for his costs incurred in such cause."

Such is the well-established English practice. *Stephens* v. *Weston*, 3 B. & C. 538; *Hodgkinson* v. *Kelly*, 1 Hogan, 388; *Hall* v. *Laver*, 1 Hare, 571, 577; *Perkins* v. *Bradley*, Id. 219, 231; *Lucas* v. *Peacock*, 9 Beav. 177; Stokes, Attys.' Liens, 138. The same principle has

been repeatedly affirmed in this country where the English practice of recognizing a lien upon a judgment has been followed.

In *Phillips* v. *Stagg*, 2 Edw. Ch. 108, the vice-chancellor says that "the attorney's lien is not to extend beyond the costs in this action. He cannot claim the amount of other costs due to him in other suits at law."

In *Adams* v. *Fox*, 40 Barb. 442, 448, Morgan, J., says: "This lien is totally different from the lien upon the papers. The lien on the judgment is confined to the costs of the particular suit, and the attorney can actively enforce it. The lien on the papers is merely a right to retain them, and applies to all his bills of costs."

In *St. John* v. *Diefendorf*, 12 Wend. 261, the precise question presented in this case was decided adversely to the attorney's lien. Having recovered a judgment, the plaintiff's attorneys there gave notice to the defendant to pay the damages, as well as the costs, to them, on the ground that they had a demand against their client, for costs in other suits, to an amount equal to the damages. The court say: "The question is whether the attorney has a lien upon his client's money, before it comes into his hands, to satisfy the demand he has against his client for costs in other suits. * * * An attorney has a lien upon his client's papers; but he has no lien upon anything which belongs to his client until it is in his possession. The costs belong to the attorney. There can be no lien upon what belongs to another without possession." *Pope* v. *Armstrong*, 3 Smedes & M. 214; *Cage* v. *Wilkinson*, Id. 223; *The Hektograph Co.* v. *Fourl*, 11 FED. REP. 844.

The petitioner contends that by the law of this state, as established by the court of appeals in the case of the *Bowling Green Savings Bank* v. *Todd*, 52 N. Y. 489, affirming 64 Barb. 146, the lien of an attorney for his general balance, which exists upon all papers and vouchers in his possession, is extended equally to any judgments recovered or moneys collectible upon them. In that case a receiver of the plaintiff was appointed after a decree for the foreclosure of a mortgage had been obtained, but before the sale of the premises. The receiver employed Cullen & McGowan, the previous attorneys of the plaintiff, to proceed in the cause, and they afterwards caused the mortgaged premises to be sold and received the proceeds, from which they claimed to deduct not only their bill in that action, but also a bill for professional services due to them from the plaintiff in other matters preceding the appointment of the receiver, and also a third bill

due to McGowan individually for still prior services. At special term both the last-named bills were disallowed. The general term, on appeal, allowed the prior bill of the firm, but disallowed the individual claim of McGowan; and this was affirmed by the court of appeals. The court last named say: "The attorneys of the bank had a lien upon the papers in the foreclosure, not only for the costs and charges in that suit, but for any general balance in other professional business;" referring to 3 T. R. 275; 8 East, 362. Neither of those cases, however, sustain the doctrine of a general lien upon a *judgment* beyond the costs in the particular cause.

In the court below, *Ingraham*, J., says, (64 Barb. 155:) "Most of the cases in which this lien [upon the judgment] is recognized are cases where the claim was for costs of that particular action in which the motion was made. But the rule is equally well settled as to any claim which the attorney has for his services, and attaches as well to the proceeds of a judgment as to the papers on which the judgment was founded." No authorities are cited for this last proposition, nor after much search have I been able to discover any in this country or in England. We have seen that, so far as respects a general lien upon a judgment, or fund in court, the authorities are all to the contrary. Where an attorney has collected money for his client, and no rights of third persons have intervened, through assignment, death, or bankruptcy, he might, doubtless, offset his own general bill. *Patrick* v. *Hazen*, 10 Vt. 184. In the case of the *Bowling Green Savings Bank*, however, the appointment of a receiver before the collection of the moneys prevented any legal right of set off. The moneys were collected by the attorneys upon the employment of, and as the attorneys of, the receiver; as, in the case of *Schwartz* v. *Schwartz*, 21 Hun, 33, the moneys were collected upon the employment and as the attorneys of the assignee. In neither of these cases does the distinction seem to be noted which has been so long established between a mere "retaining lien" upon the papers in the possession of an attorney, which is general but purely passive, and his "charging lien" upon a judgment or fund recovered, which is limited to services in the cause, but capable of being actively enforced.

Numerous prior decisions of the court of appeals have declared, like the English cases, that an attorney's lien upon a judgment is based upon the equitable consideration that it is by the attorney's labor and skill that the judgment has been recovered; the judgment

v.12,no.3—16

being within the control of the court, and the parties within its jurisdiction, the court will see that no injustice is done to its own officers.

In *Rooney* v. *Second Avenue R. Co.* 18 N. Y. 368; in *Ely* v. *Cooke*, 28 N. Y. 373; in *Dunkin* v. *Vandenbergh*, 1 Paige, 626; and in many other cases, the attorney has upon this ground been regarded as an equitable assignee of the judgment to the extent of his demands in the cause. Prior to the adoption of the Code of Procedure the extent of this lien was limited to the taxable costs. The Code has made no other change than to extend the lien to any agreed or deserved compensation. *Marshall* v. *Meech*, 51 N. Y. 140, 143; *Haight* v. *Holcomb*, 7 Abb. Pr. 210; *Ackerman* v. *Ackerman*, 14 Abb. Pr. 229.

*Harris*, J., in the *Case of Rooney*, above cited, says that the attorney is now "to be regarded as the equitable assignee of the judgment to the extent of his claim for services *in the action*." In the same case *Comstock*, J., says: "The attorney is entitled to a lien, as against his client, because his labor and skill contributed to the judgment, * * *" and he "has an interest in the judgment either to the amount of those, or for some other amount which he is entitled to claim (by agreement or on the *quantum meruit*) as the measure of his compensation."

In *Marshall* v. *Meech*, 51 N. Y. 143, the court say that the "attorney has a lien for his costs and compensation upon the judgment recovered by him. Such a lien existed before the Code, and is not affected by any provision of the Code. The lien exists, not only to the extent of the costs entered in the judgment, but for any sum which the client agreed his attorney should have as a compensation for his services. To the amount of such lien the attorney is to be deemed an equitable assignee of the judgment."

In *Wright* v. *Wright*, 70 N. Y. 100, the court say: "The attorney had a lien for the amount of his costs and *agreed compensation* upon the judgment, and *to that extent* may be regarded as an equitable assignee of the judgment." See, also, *Ward* v. *Syme*, 9 How. Pr. 16.

Neither in the decisions nor in the principles announced in any prior cases do I find any warrant for holding that an attorney has any lien upon an uncollected judgment beyond his compensation in the particular cause.

In the case of *Wolfe* v. *Lewis*, 19 How. (U. S.) 280, a case very closely analogous to that of the *Bowling Green Savings Bank*, the attorney had obtained a judgment of foreclosure, but the money due was paid into court without sale. Upon the attorney's claim

of a general lien for other services, and an order for payment thereof out of the fund by the court below, the supreme court reversed the order and directed the fund to be paid to the complainants.

In a recent case (*In re Knapp*, 85 N. Y. 284) *Danforth*, J., says: "The lien of the attorney upon a judgment recovered by him is upheld upon the theory that his services and skill procured it," (71 N. Y. 443;) thus reaffirming the only ground upon which this lien has ever been put, and which, while it explains the reason for the lien, also necessarily limits it to the services and charges in the same action. In the case last cited the same eminent justice adds: "No new rule was enunciated in *Bowling Green Savings Bank* v. *Todd*, 52 N. Y. 489, where it was said that the lien of the attorney attaches to the money recovered or collected upon the judgment."

As the prior rule was undoubted that the lien upon the judgment did not extend beyond the costs and compensation in the cause, or in the same subject-matter, and as no new rule was intended to be enunciated in the *Case of the Bowling Green Savings Bank*, it must be understood that the court of appeals did not intend in that case to overrule so many express adjudications that where the moneys have not been reduced to the attorney's actual possession, his lien upon the judgment does not extend beyond the amount of compensation due to him in the particular cause, or in the same subject-matter. *In re Paschal*, 10 Wall. 496; *The General Share T. Co.* v. *Chapman*, L. R. 1 C. P. Div. 771.

In the present case the petitioner never came into possession of the moneys claimed; they were procured by the services of other attorneys, by legal proceedings subsequent to the date of the petitioner's claim. These subsequent services were necessary to realize anything upon the judgment, and the subsequent attorneys have their own lien upon the judgment and its proceeds for their subsequent services in the cause; and, upon the doctrine contended for by the petitioner, they might have a conflicting lien for their own general balance, to the full amount collected, if their bill amounted to so much. Were the doctrine to be recognized that attorneys have a general lien for all their professional services upon each and every uncollected judgment which they might have obtained in behalf of a client, through an indefinite period, very great confusion and inconvenience would be the necessary result. The petitioner's general bill, in this case, exceeded each of the judgments against James Wilson. If one of them only had been collected by the subsequent

attorneys, the prior equitable assignment to the petitioner, upon the doctrine contended for, would either have entitled him to the entire proceeds, to the exclusion of the subsequent attorneys who might have had greater equitable claims for their services in obtaining the money upon the judgment, or else would compel a further judicial hearing and determination, as between the former and subsequent attorneys, as to the apportionment of the proceeds between them.

The bill of services which the petitioner now seeks to charge upon the two earlier judgments is, moreover, a bill for obtaining judgment against Hine and Phillips, some four months afterwards. How much, if any, of this bill existed in January, 1879, when the judgments against Wilson were recovered, does not appear; and, by the rule that formerly existed, the attorney had no lien, except upon papers in his hands, until judgment, or, at least, till a verdict. *Sweet* v. *Bartlett,* 4 Sandf. 661; *McCabe* v. *Fogg,* 60 How. Pr. 488. This latter bill, as it now stands, could not, therefore, have been a lien upon the prior Wilson judgments when they were entered; and if not a lien then, how could it become so afterwards? Neither principle nor authority can sanction an increase in the amount of a lien upon an uncollected judgment through subsequent services in independent matters. Section 66 of the new Code of Procedure, 1879, which gives an attorney "a lien upon his client's cause of action" from its commencement, refers, I think, to his services and charges in the cause itself, and no more, and does not affect the questions here considered.

The petitioner's claim to a lien upon the judgments against Wilson must therefore be disallowed.

Upon the pending suits, transferred by the petitioner under the agreement, the assignee has collected $144.57. The petitioner had a lien upon these suits and on the papers therein for his general bill, which the agreement has preserved. Those papers were essential to the further prosecution of these suits, and to the recovery of the moneys afterwards collected therein. Upon the authorities above cited (*In re Paschal,* 10 Wall. 483; *In re Broomhead,* 5 Dowl. & L. 52, etc., *supra*) the court would not have ordered those papers to be transferred by the petitioner except upon payment of his general bill, or some security analogous to that of the agreement made. *Carver's Case,* 7 Nott. & H. 499; *Heslop* v. *Metcalfe,* 3 Myl. & C. 183; *Cane* v. *Martin,* 2 Beav. 584; *The Hektograph Co.* v. *Fourl,* 11 FED. REP. 844. By that agreement this lien must be paid "out of the first mon-

eys collected from those suits." I find a balance of $74.55 collected upon these suits not applied to the petitioner's benefit, and he is, therefore, entitled to that amount.

The substitution of attorneys upon the Wilson executions, and the surrender of the notes upon which those judgments were founded, were not necessary, and were of no value in the subsequent collection of those judgments; they were not even clearly embraced in the terms of the agreement between the parties; and, as they were of no beneficial use, the surrender of them cannot now serve as a basis for any claim to a general lien upon the Wilson judgments which did not previously exist.

In *Hodgins* v. *Kelly*, 1 Hogan, 388, the court say: "The general lien exists as to the papers and deeds in his [the attorney's] hands, but cannot be extended to the funds in the cause if the plaintiff can obtain payment without his assistance or the use of those papers."

The petitioner may have an order for the payment of $74.55, and his disbursements in this proceeding.